[Civ. No. 24317. Second Dist., Div. Two. Apr. 21, 1960.]

RUTH UNGER, Respondent, v. LOS ANGELES TRANSIT LINES (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

David S. Smith for Appellant.

Frank Alef for Respondent.

ASHBURN, J.—Defendant Los Angeles Transit Lines appeals from a default judgment in favor of plaintiff rendered in a personal injury action in the sum of $3,500. The default was entered because of defendant's refusal and fail-

ure to answer certain interrogatories propounded by plaintiff pursuant to section 2030, Code of Civil Procedure.

That section provides, in subdivision (b) : "Interrogatories may relate to any matters which can be inquired into under subdivision (b) of Section 2016 of this code, and the answers may be used to the same extent as provided in subdivision (d) of Section 2016 of this code for the use of the deposition of a party." Section 2016, subdivision (b), relating primarily to depositions, says that, subject to certain exceptions not here pertinent: " [T]he deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party, or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and *the identity and location of persons having knowledge of relevant facts.* It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. *All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure.* This article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision, nor shall it be construed to incorporate by reference any judicial decisions on privilege of any other jurisdiction." (Emphasis added.)

Plaintiff's action is one for damages for personal injuries received while she, as a passenger, was alighting from one of defendant's busses. The interrogatories so propounded were these: "1. State the names and addresses of all persons, now known to you or to any of your officers, agents, employees or attorneys, who were passengers on the Los Angeles Transit Lines bus from which the plaintiff alighted on Wilshire Boulevard at St. Andrews Place, in Los Angeles, on June 13, 1957, at about 3 :50 P. M., and who were in said bus at the time that plaintiff alighted therefrom.

"2. State the names and addresses of all persons, now known to you or to any of your officers, agents, employees or attorneys, who saw the plaintiff fall while or after alighting from a Los Angeles Transit Lines bus at Wilshire Boulevard and St. Andrews Place in Los Angeles, on June 13, 1957, at about 3 :50 P. M.

"3. State the names and addresses of all persons, now known to you or to any of your officers, agents, employees or attorneys, who have any information regarding the aforesaid accident in which the plaintiff was involved on June 13, 1957, at about 3:50 P. M. at Wilshire Boulevard and St. Andrews Place in Los Angeles, and indicate the information that they have."

The court granted a motion to compel defendant to answer numbers 1 and 2 and denied it as to number 3. Defendant vigorously argues that said interrogatories 1 and 2 call for matter which is privileged, and that the court's order requiring that they be answered authorizes an unreasonable search of defendant's records. The latter argument goes wide of the mark for the said interrogatories require disclosure of names and addresses of passengers on the bus (presumptive witnesses) and of persons who actually witnessed the accident; they call for nothing more.

The claims of privilege and of unreasonable search stem from the following facts. The driver of the bus (who was also made a defendant but was not included in the default judgment) immediately procured the names and addresses of such witnesses as he was able to get; that information was placed on "witness cards"; no statements were taken; the cards were delivered ultimately to the attorneys employed by defendant's insurance carrier, Transit Casualty Company. Its contract of insurance required it to investigate, settle or defend such actions; the policy also required full cooperation of the insured; the dominant purpose of obtaining this information was to enable the attorneys for defendant (employed by the insurance company) to properly handle any claim and to defend any lawsuit. ▉ "In such a situation the attorneys for the insurance company must be treated as the defendants' attorneys and any material which is in their possession, custody or control solely because of this relationship is also in the possession, custody or control of the defendants, and therefore is reachable under section 2031. To hold otherwise would allow parties to defeat the purpose of the statute." (*Clark* v. *Superior Court*, 177 Cal.App.2d 577, 579 [2 Cal.Rptr. 375].)

▉ The law seems now to be settled in this state that interrogatories calling for names and addresses of witnesses are not objectionable on the ground of privilege or unreasonable search. The information may repose in a privileged

document but the information itself, as distinguished from the written record, is not privileged. The point was directly decided in *City & County of San Francisco* v. *Superior Court,* 161 Cal.App.2d 653 [327 P.2d 195] (June 26, 1958), and the Supreme Court denied a hearing. It does not appear in the record before us whether the driver of the bus had independent recollection of the desired information (which later proved to be his own name and address plus that of one witness), but it was shown in the San Francisco case that the operator of the bus had forgotten the facts and they reposed only in a memorandum which he had made and delivered to his employer, one which was made for defense purposes of the insurance company and came to rest in the possession of attorneys employed by it. The opinion in the cited case says, at page 654, that the bus driver testified upon deposition ''that immediately after the accident he took the names and addresses of two passengers on the bus and, at the end of the day, delivered to his dispatcher the memorandum bearing these names and addresses, which was later forwarded to the city attorney. At the time of his deposition, the driver did not remember either the names or the addresses. Plaintiffs served upon defendant written interrogatories (Code Civ. Proc., § 2030) concerning these two witnesses. Defendant filed its written objections (Code Civ. Proc., § 2030, subd. (a)) to the interrogatories upon the sole ground that the information sought is within the attorney-client privilege (Code Civ. Proc., § 1881, subd. (2)). After hearing, the court announced that it would make its written order directing defendant to answer one interrogatory, that seeking the names and addresses of the two passenger-witnesses. The minutes recite 'ordered (defendant) to answer questions.' Before written order was signed, defendant filed this petition for writ restraining enforcement of the order.'' The writ was denied, the court saying further, at page 655: ''The order here in question does not require inspection of any statement, nor does it direct revelation of the contents of the statement of any witness or party. It requires only that defendant give to plaintiffs the names and addresses of two witnesses.

''It is conceded that the information sought would not be privileged if remembered by the bus driver who secured it. It seems equally obvious that, if he refreshed his recollection by looking at his own memorandum now in the hands of the city attorney, he could be compelled to answer from such refreshed recollection. At this stage of the proceedings, we

must assume some merit in plaintiffs' claim that they suffered injury as a result of the busman's driving deficiencies. We see no reason to hold that prosecution of their case should also suffer because of his defects of memory.''

Explaining that *Holm* v. *Superior Court,* 42 Cal.2d 500 [267 P.2d 1025, 268 P.2d 722], was inapplicable, the court further said at page 656: ''There plaintiff sought to have the communications themselves opened to his full inspection. In the case at bar, plaintiffs do not seek to examine any communication. They ask nothing about any mental process or rationalization, favorable or unfavorable, communicated by the city's employee to the city attorney. They seek only a simple fact, wholly unrelated to any observation, thought process or admission of the driver relating in any way to the occurrence of the accident. Thus the content of the memorandum is wholly distinct from that in Holm, and here, unlike the situation in Holm, there is no attempt to secure or inspect the communications as such. We conclude that the names and addresses of the two bus passengers are not privileged.''

The instant case is distinguishable from such decisions as *Holm* v. *Superior Court, supra,* 42 Cal.2d 500, wherein it was sought to examine a report prepared and furnished for the dominant purpose of enabling the attorneys for defendant or its insurer to properly defend any claim. In the same category are *Jessup* v. *Superior Court,* 151 Cal.App.2d 102, 104 [311 P.2d 177]; *Heffron* v. *Los Angeles Transit Lines,* 170 Cal.App.2d 709, 716 [339 P.2d 567]; *Twin Lock, Inc.* v. *Superior Court,* 171 Cal.App.2d 236, 238 [340 P.2d 748]; *Rust* v. *Roberts,* 171 Cal.App.2d 772, 776-777 [341 P.2d 46].

That the San Francisco case, *supra,* is in accord with the weight of authority throughout the nation is attested by an annotation appearing in 37 American Law Reports 2d 1152, entitled ''Names and addresses of witnesses to accident or incident as subject of pretrial discovery.'' It follows the report of *Reynolds* v. *Boston & Maine Transp. Co.,* 98 N.H. 251 [98 A.2d 157, 37 A.L.R.2d 1149]. In that case the court required disclosure of the names of witnesses which were upon cards furnished by bus passengers and did so in the absence of a statute containing the phrase, ''the identity and location of persons having knowledge of relevant facts'' found in our section 2016, subdivision b, Code of Civil Procedure. At page 159 of 98 A.2d, the court said: ''These passengers

as witnesses to this accident are not the exclusive property of either party. In the interest of justice both parties are entitled to have their testimony introduced in this action for whatever help it may furnish in arriving at a just determination. Plaintiff is not endeavoring to ascertain what defense the defendant contemplates making nor facts that exclusively relate to its case but is seeking discovery of facts which will enable her to prove her case. We fail to see how an order that the defendant produce the names and addresses in its possession would violate the letter or the spirit of R.L., c. 392, § 23 or any of the equitable safeguards which surround the remedy of discovery.''

The Supreme Court of Illinois expressed the same view in *Hruby* v. *Chicago Transit Authority*, 11 Ill.2d 255 [142 N.E.2d 81, 83] : ''The evidence shows that after the accident forming the basis of the instant suit occurred, the conductor passed out 'courtesy cards' on which the occupants of the streetcar were asked to write their names and addresses. These cards were then forwarded to the defendant's investigation department. This procedure was routine, it being carried out after every accident pursuant to standing orders of the company.

''The privilege conferred by Rule 19-5 as to 'Disclosure of memoranda, reports or documents made by or for a party in preparation for trial' is not applicable on these facts. The plaintiff is not seeking any statements of witnesses or reports compiled by the defendant. Rather, he merely asks for the names and addresses of those members of the traveling public who out of 'courtesy' gave them to the defendant's conductor, before any lawyers had entered the case or any litigation was contemplated. He did not ask for a lawyer's 'work product,' see *Krupp* v. *Chicago Transit Authority*, 8 Ill.2d 37, 39 [132 N.E.2d 532], and in the light of both the letter and objectives of our discovery provisions, Rule 19-5 cannot be stretched to encompass this situation.''

The ultimate philosophy of the rule requiring such disclosures seems to be stated in 4 Moore's Federal Practice (2d ed.), section 26.19, page 1079 where, referring to rule 26 of the Federal Rules, the author says: ''The sporting theory of litigation thrives on surprise—including surprise witnesses. Elimination of this sort of tactics is a legitimate purpose of the discovery rules, especially when considered in connection with Rule 16 on pre-trial proceedings. These rules, taken together, give the courts broad powers to simplify

litigation and to avoid surprise.'' Every experienced trial lawyer knows that surprise is one of the most potent instruments for uncovering, blasting out, the truth that there is, but the theorists who have evolved our discovery rules dub it ''the sporting theory of litigation'' and have condemned it. Whether we individually like it or not, such is the situation and the law of California is that disclosure of witnesses may be compelled in circumstances such as those presented at bar.[1] The fact that the cards containing the names of witnesses were in the possession of the attorneys for defendant is immaterial (*cf. Wilson* v. *Superior Court,* 148 Cal.App.2d 433, 441 [307 P.2d 37]).

Authorities such as those above discussed also point to the conclusion that requiring the disclosure of names and addresses of witnesses in circumstances such as those presented here does not involve an unreasonable or unlawful search— that it does not involve any search whatever or other violation of constitutional rights. ''The order here in question does not require inspection of any statement, nor does it direct revelation of the contents of the statement of any witness or party. It requires only that defendant give to plaintiffs the names and addresses of two witnesses.'' (*City & County of San Francisco* v. *Superior Court, supra,* 161 Cal. App.2d 653, 655.)

As hereinafter shown, defendant applied to the District Court of Appeal and the Supreme Court for a writ of prohibition or other appropriate writ herein and the application was denied; but those rulings adjudge ''nothing except that, for reasons sufficient to the court, that writ should not issue; this is true except in rare instances'' (*Confidential, Inc.* v. *Superior Court,* 157 Cal.App.2d 75, 78 [320 P.2d 546]). However, as the same points were there raised as here, the rulings are at least persuasive.

There is no real question of unreasonable search involved in the instant case. Cases prescribing the essentials of the showing necessary to an inspection of documents in defendant's

[1]Section 26.19, pages 1079-1080, of 4 Moore's Federal Practice further argues that the elimination of the ''sporting theory'' of litigation also leads properly to the right of a litigant to require his opponent to disclose, in answer to interrogatories, the names of the witnesses whom he intends to call at the trial. Apparently California does not go that far, for the rules for the Superior Courts relating to pretrial conferences adopted by the Judicial Council provide, in rule 8.3 (e): ''At the pretrial conference no party shall be required to disclose his witnesses.''

possession (e.g., *McClatchy Newspapers* v. *Superior Court,* 26 Cal.2d 386, 396 [159 P.2d 944]), are not pertinent to this appeal for there was and is no effort made to obtain an inspection of any of defendant's papers or records.

Section 2034, subdivision (a), Code of Civil Procedure, provides that upon refusal of any party to answer any interrogatory submitted under section 2030 the proponent may apply for an order requiring the recalcitrant party to answer the same. Paragraph (b) (2) of said section 2034 says: "If any party or person for whose immediate benefit the action or proceeding is prosecuted or defended, or an officer, director, superintendent, member, agent, employee or managing agent of any such party or person refuses to obey an order made under subdivision (a) of this section . . . the court may make such orders in regard to the refusal as are just, and among others the following : . . .

" (iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . (v) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental or blood examination. . . ." In the present instance the court struck defendant's answer to the complaint, entered its default and rendered a default judgment for $3,500. As neither of these orders is appealable (*Unger* v. *Los Angeles Transit Lines,* 170 Cal.App.2d 706, 708 [339 P.2d 586]), the propriety of the judge's rulings is reviewable upon the appeal from the judgment which is properly before us. This means an examination of the quality of discretion exercised by the trial judge and necessitates a review of the progress of this case below.

Defendant's answer to complaint was filed on November 1, 1957; the interrogatories were served upon defendant on March 3, 1958; answers thereto were due 15 days after service, same to be made "fully in writing under oath." (§ 2030(a).) Within 10 days after service defendant was entitled to serve written objections together with notice of hearing of same at the earliest practicable time. (§ 2030(a).) Defendant did none of these things but on March 24, 1958, filed purported answers containing only the word "privileged" after each interrogatory. This the trial court correctly ruled to be no

answer at all; it was merely an asserted reason for not answering. On April 8 plaintiff served a notice of motion for an order compelling defendant to answer, which notice was returnable on April 21 but was continued to the 28th; meantime, defendant on April 23rd served affidavits and a memorandum of points and authorities in opposition, all of which advanced the claim of privilege; plaintiff filed counter affidavits; the motion was granted on May 1, 1958, as to the first two interrogatories only. The court filed a memorandum saying, *inter alia*: "It is obvious from the interrogatories propounded to defendant that plaintiff does not seek to examine or obtain copies of any of the accident reports filed by employees of the Transit Lines with its attorneys, or any of the statements which may have been obtained from witnesses. Such reports and statements are privileged within the meaning of sections 2030 and 2016(b), Code Civ. Proc. . . . A liberal construction of these sections requires the conclusion that information as to the 'identity and location of persons having knowledge of relevant facts' is not protected by the privilege and must be furnished upon proper inquiry."

On May 15 defendant's present counsel was substituted in place of the attorneys who had previously represented defendant; in an affidavit filed later (September 5, 1958), Mr. Smith averred that "Said matter was received by affiant for the limited purpose of processing petitions for relief to the District Court of Appeal and to the Supreme Court, if necessary, concerning an order of the Superior Court requiring defendant to answer certain interrogatories." On the day after his substitution he filed a motion for reconsideration of the ruling of May 1st, which motion was heard and denied on June 2nd. Defendant having done nothing further, plaintiff on June 16th gave notice of motion to be heard on the 23rd for an order striking defendant's answer to the complaint and rendering judgment by default against it. The ground of the motion was refusal of defendant to obey the court's order of May 1, notice of which ruling had been served on defendant's counsel on May 4, together with notice of ruling of June 2 which denied reconsideration. Thereupon, defendant came to life and filed an opposing affidavit of its new counsel, saying in part: "The issues involved in the within matter with respect to the interrogatories ordered to be answered are to be presented to the District Court of Appeal of the State of California, and possibly to the Supreme

Court of said State, through the process of a petition for issuance of a writ rather than through the process of appeal . . . and prior to June 23, 1958, said matter will have been filed with the Clerk of said District Court of Appeal." Also: "The order of the within Court will be honored and complied with *in toto, in the event said orders are finally determined by a court of appeal to be obligatory upon defendant.* Affiant therefore requests that all further proceedings herein be deferred until a final adjudication in the within matter, and that in the event such adjudication is adverse to defendant, at least ten days be permitted to furnish the information sought through the interrogatories, after the filing of the remittitur." (Emphasis added.) On June 23rd the motion to strike was granted and entry of default of said defendant Transit Lines was ordered.

Meantime, on June 19, 1958, Transit Lines filed in this court a petition for writ of prohibition, mandate or certiorari, which attacked the lower court's ruling on the same grounds urged upon the instant appeal; the prayer for prohibition sought a "restraining [of] respondents from any further proceedings" with respect to said interrogatories. If issued the alternative writ would have contained such a provision (Code Civ. Proc., § 1104). This petition was denied by Division Three without opinion on June 30, 1958, and petition for rehearing denied on July 15th. Petition for hearing in the Supreme Court was filed and was denied without opinion on August 28, 1958.

The hearing upon plaintiff's application for a default judgment came before Judge John Gee Clark on July 10, 1958; he heard evidence and placed the matter off calendar to be reset "after there has been a decision by the upper court." Seven days after the Supreme Court had ruled, defendant served notice of motion, to be heard on September 22nd, for an order vacating its default, vacating the order striking its answer and restoring the answer. The assigned ground of motion was: "Said motion will be made and based upon the ground that the default of the defendant was ordered by reason of the failure of defendant to answer certain interrogatories previously ordered by the Court to be answered, and the answer of said defendant was stricken for the same reason; that the answers to said interrogatories were not furnished because defendant desired to prosecute relief from said order requiring the furnishing of information to written interrogatories by petitioning to the District Court of Appeal

and to the Supreme Court of this State for such relief; that petitions for such relief were filed in the District Court of Appeal and in the Supreme Court of this State, and said Courts have refused to currently hear said petitions; that said petitions were processed in good faith because of the desire of the defendant to obtain a ruling of a higher Court concerning its obligations in furnishing names and addresses of witnesses obtained by defendant to any accident in which it might be involved." Nothing was said about section 473, Code of Civil Procedure, or any of its recognized grounds of relief. A supporting affidavit disclosed that the only known witnesses were the bus operator and one Eleanor Alexander, 5169 West Washington Boulevard, Los Angeles. Before the service of this motion on September 5th, there had been a consistent refusal to disclose the name of the witness notwithstanding the court's orders of May 1, June 2 and June 23, and the rulings of the District Court of Appeal and Supreme Court. The motion was heard by Judge Philbrick McCoy who had made all of the previous orders except that of July 10, 1958; he denied the motion on November 5th and in an explanatory memorandum said: "As to defendant's claim that it processed its petitions in good faith, it is interesting to note that, in its petition for hearing in the Supreme Court, no reference is made to the language of section 2016, subdivision b, Code of Civil Procedure, entitling a plaintiff to discover from a defendant 'the identity and location of persons having knowledge of relevant facts.' Similarly, a review of the record in this court shows that, although plaintiff [defendant] contended that the information called for by the interrogatories was privileged, its counsel never considered the effect of this provision, notwithstanding the well-established interpretation of the identical language of Federal Rule 26, that 'persons having knowledge of relevant facts' do not belong to any party. 4 Moore's Federal Practice, par. 26.19, p. 1075. . . . In these circumstances, defendant's claim of good faith is at least open to question." Also: "Defendant does not contend that the order it would have the court set aside is void, or that the order was taken against it through its mistake, inadvertence, surprise or excusable neglect."

Motion to reconsider was noticed for November 25 and a motion to disqualify Judge McCoy for prejudice was made returnable on the same day. The latter motion was not supported by any affidavit. Respondent's brief says, "and at

the hearing on the motion, defendant's counsel admitted that it could not state under oath that it believed that a fair and impartial hearing could not be had before the Judge," and this is not denied in appellant's reply brief. These motions were denied on December 1 and December 8. Again the judge filed a memorandum and addressed himself, among other things, to a contention "that defendant should be granted the relief it seeks under section 473, Code Civ. Proc., since the default was entered by reason of defendant's mistake of law." He said, in part: "In the absence of any controlling decisions in this State, defendant gambled on the hope that the appellate courts would hold that 'the identity and locations of persons having knowledge of relevant facts' was privileged under the law of this State, notwithstanding the express language of section 2016(b) permitting examination on that subject by its opponent. *Cf. City & County of San Francisco* v. *Superior Court,* 161 Cal.App.2d 653 [327 P.2d 195]. This desire of the defendant to obtain a ruling of an appellate court with respect to its obligation to answer the interrogatories propounded by plaintiff did not constitute a mistake of law within the meaning of the rule on which defendant now relies." Also: "The sum of the matter is little more than this, that in view of the provisions of section 2034(d) defendant knew it was taking a calculated risk in refusing to answer plaintiff's interrogatories. Having thus gambled and lost, defendant cannot now fall back on the proposition that it simply made an honest and reasonable mistake of law and that it should be relieved from the consequences of that mistake. The situation here is not comparable to those involved in any of the cases cited by defendant in support of its present position." In view of the record made by defendant these pertinent observations appear to be both sound and timely.

Next defendant appealed from the following orders, (a) denying defendant's motion for order to vacate and set aside default; (b) denying defendant's motion to vacate order striking defendant's answer; (c) denying defendant's motion to restore its answer. Upon argument of a motion to dismiss, which was heard in Division One of this court, counsel conceded the motion to be well taken and the appeal was dismissed on May 27, 1959. (*Unger* v. *Los Angeles Transit Lines,* 170 Cal.App.2d 706 [339 P.2d 586].)

Finally, on July 21, 1959, Judge Clark heard the applica-

tion for default judgment; defendant's counsel was permitted to appear and participate; witnesses were heard and judgment for $3,500 rendered. Then followed the appeal which is now before us. Of course the intermediate and non-appealable orders are reviewable at this time.

Pertinacity of purpose is admirable, generally speaking. But ground for relief from default does not grow out of mere pertinacious refusal to comply with a valid court order. Answers to the interrogatories were due on March 18, 1958, no extension of time was obtained, the matter was ignored until March 24 when defendant filed so-called answers which merely labeled each request as "privileged." Never until the court had ordered the answers stricken and default entered did defendant disclose the information sought by the interrogatories. It never has specifically answered them. When confronted with the motion to strike counsel advised the court of his intention to seek a special writ from the District Court of Appeal and asserted that the outstanding order of the court requiring answers to the interrogatories would be "honored and complied with *in toto,* in the event said orders are finally determined by a court of appeal to be obligatory upon defendant," but not otherwise. Defiance of the court does not create ground for relief from orders ensuing therefrom.

An application for prohibition doubtless was a proper method of attacking the order requiring answers (*Holm* v. *Superior Court, supra,* 42 Cal.2d 500, 505; *City & County of San Francisco* v. *Superior Court, supra,* 161 Cal.App.2d 653, 655; *Markwell* v. *Sykes,* 173 Cal.App.2d 642, 649-650 [343 P.2d 769]), but the remedy should have been pursued expeditiously. The order requiring answers was made on May 1 and no petition for prohibition or other special writ was filed until June 19th. It took Division Three of this court only 11 days to dispose of the applications. Though not then final the ruling should have alerted counsel to the danger of further delay, but defendant continued in its refusal to answer. Of course the mere filing of a petition for prohibition or other extraordinary writ does not effect a stay ipso facto; an alternative writ or an express stay order is necessary to effectuate that end. Motion for judgment upon default was made on July 10, 1958, and placed off calendar; still no answer was made to the interrogatories. Never until September 5, 1958, was disclosure made and then only as an aid

to a motion to be relieved from default. We agree with the trial judge's conclusion that defendant assumed a calculated risk, gambled and lost, and that it has not shown sufficient cause for relief from default to warrant us in holding that Judge McCoy abused his discretion in denying the motion for relief.

Defendant's notice of appeal specifies the judgment and the orders "denying defendant's motion for orders to vacate and set aside the default of the defendant herein, denying defendant's motion to vacate order striking defendant's answer, and denying defendant's motion to restore said answer." None of these orders is appealable. (*Unger* v. *Los Angeles Transit Lines, supra,* 170 Cal.App.2d 706.)

The judgment is affirmed; appeals from orders are dismissed.

Fox, P. J., and Richards, J. pro tem.,* concurred.

On May 18, 1960, a petition for a rehearing was denied and the following opinion was then rendered:

THE COURT.—Appellant raises upon petition for rehearing the claim that "The action of the Superior Court in striking the answer of defendants and entering their default was wholly violative of decisions of the United States Supreme Court on this subject," the argument being that this procedure amounted to a denial of due process. Counsel cites the cases of *Societe Internationale* v. *Rogers,* 357 U.S. 197 [78 S.Ct. 1087, 2 L.Ed.2d 1255], and *Hovey* v. *Elliott,* 167 U.S. 409 [17 S.Ct. 841, 42 L.Ed. 215].

*Societe Internationale* is clearly distinguishable upon its facts, for the party there subjected to sanctions in the lower court was unable to make the production of the required documents. But *Hovey* v. *Elliott* holds that it is a denial of due process to punish a party for contempt by striking his answer from the files and rendering a default judgment against him where the object of the procedure is merely that of punishment.

*Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322, 349 [29 S.Ct. 370, 53 L.Ed. 530, 544], draws a clear distinction between a case wherein a default is entered by way of mere penalty for past persistence in refusal to make disclosure and one wherein an order is made as a means of compelling discovery.

*Assigned by Chairman of Judicial Council.

4 Moore's Federal Practice (2d Ed.) § 37.03, page 2805, speaking of the federal counterpart of our discovery statute, summarizes the effect of the authorities, saying: "In its Note to Rule 37 the Advisory Committee points out that a distinction must be made between the justifiable use of orders of this sort as a means of compelling the production of evidence, and their unjustifiable use for the mere purpose of punishing for contempt. The two landmark cases on this question are *Hammond Packing Co.* v. *Arkansas,* decided by the Supreme Court in 1909, and the Court's earlier decision in *Hovey* v. *Elliott.* The *Hovey* case establishes that it is a denial of due process of law to punish a party for contempt by striking his answer from the files and rendering a default judgment against him. The *Hammond* case, however, makes it clear that a defendant's answer may be stricken and default judgment entered for failure to secure attendance of witnesses and to produce documents; the Court's theory was that 'the preservation of due process was secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense.' In most cases there will be no difficulty in determining which of these two decisions is controlling."

In an annotation of the subject "Due process as affecting court's power to render judgment in civil case against party for failure to obey court order—federal cases," found in 99 L.Ed. page 54, it is said: "Summing up the results of the cases in point, it may be fairly concluded that a trial court violates due process by rendering an adverse judgment against a party solely for the purpose of punishing him for contempt, but due process is not violated where, to punish a party's failure to obey a court order, his motion to set aside a default judgment is denied, or his appeal is dismissed; nor is due process violated where an adverse judgment is rendered against a party as a consequence of his failure to comply with an order relating to the production of evidence."

It appears at bar that defendant was ordered on May 1, 1958, to answer interrogatories 1 and 2. No answer having been given by June 16th plaintiff moved for an order striking defendant's answer and rendering judgment by default. Defendant in response said it was about to challenge the order of May 1st in the appellate courts and that the order would be "honored and complied with in toto, in the event said orders are finally determined by a court of appeal to be obligatory upon defendant." The motion to strike was granted

and default entered on June 23d. Defendant persisted in its refusal to answer the interrogatories until after an adverse ruling of the Supreme Court on August 28th. Thereupon it moved to vacate the default and then disclosed for the first time the names of the witnesses sought by the interrogatories. Clearly this case falls within the scope of the Hammond decision, *supra,* rather than that of *Hovey, supra.* The following language of *Hammond,* with the substitution of name, is here pertinent: "As [Los Angeles Transit Lines] absolutely declined to obey the order, and stood upon what it deemed to be its lawful rights and privileges, even if that course of conduct was taken because of a contrary conception as to the meaning of the statute, it is not within our province to afford relief because of an error of judgment in this respect. That is to say, we may not hold that the statute and order were arbitrary and unjust in the particulars asserted when it is conclusively determined that they do not have that effect." (P. 347.) We conclude that there has been no denial of due process here.

Appellant's petition for a hearing by the Supreme Court was denied June 14, 1960.