[Civ. No. 49300. Second Dist., Div. Three. Nov. 23, 1976.]

CITY OF LONG BEACH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
EUGENE FRANCIS HENDERSON, Real Party in Interest.

**COUNSEL**

Buck, Molony, Nimmo & Ammirato and Vincent A. Ammirato for Petitioner.

No appearance for Respondent.

Olney, Levy, Kaplan & Tenner and Richard Devirian for Real Party in Interest.

**OPINION**

**POTTER, J.**—Petitioner, City of Long Beach, seeks a "writ of prohibition or other appropriate relief" permanently restraining respondent Superior Court of the State of California for the County of Los Angeles from enforcing its order requiring that petitioner answer a particular interrogatory.[1] The interrogatory reads as follows: "9. List the witnesses whom you intend to call at the time of trial herein, and the nature and extent of the testimony which will be offered by or through said witnesses."

Petitioner is a defendant in a Los Angeles Superior Court action entitled Henderson v. City of Long Beach, Southern California Edison Company, and Does I through XX, inclusive, No. SOC 31526. Eugene Francis Henderson, plaintiff in that personal injury action and real party in interest herein (hereinafter "plaintiff"), filed a complaint on May 25, 1973. The complaint alleged that on December 14, 1972, plaintiff was involved in an automobile accident on Harbor Scenic Drive in the City of Long Beach; that petitioner "negligently and carelessly owned, maintained, controlled, inspected, warranted, designed [and] constructed certain premises and standard lighting and appurtenances thereto in the vicinity of Harbor Scenic Drive"; and that plaintiff was injured "as a proximate and direct result of [petitioner's] conduct." On July 3, 1973, petitioner filed an answer denying all of the allegations.

---

[1]We treat this as a petition for a writ of mandate requiring respondent court to vacate its order.

On May 12, 1976, plaintiff served petitioner with the most recent set of interrogatories,[2] including the disputed Interrogatory No. 9.

On June 28, 1976, petitioner responded. Questions Nos. 7 and 8 specifically applying to expert witnesses were answered; however, in response to Interrogatory No. 9, calling for a list of the witnesses intended to be called at trial and the nature and extent of their testimony, the petitioner wrote: "Objection is made to this interrogatory as it does not solicit information which may be given by answers to interrogatories and on the further ground that it is attorney work product (C.C.P. Section 2016 (b), 2016 (g))."

On June 30, 1976, plaintiff filed a notice of motion to compel further answers to interrogatories, accompanied by a declaration. The declaration in support of the motion merely quoted the interrogatory and stated that (1) the plaintiff believes and contends that "a further answer [to Interrogatory No. 9] is appropriate," and (2) that "[p]laintiff contends that trial witnesses may be obtained through interrogatories and the information sought is not attorney work product."

On July 12, 1976, petitioner filed a memorandum of points and authorities in opposition to the motion to compel on the grounds of work product protection. At a hearing on the motion on July 20, 1976, respondent superior court granted the motion. The court made a formal order requiring petitioner to "further answer fully and completely Interrogatory No. 9." At the time of the hearing, the judge orally explained the scope of its forthcoming order as follows:

"Now, with respect to the ordinary witnesses, they have to generalize as to the nature and extent of their testimony, and that's all. They don't have to be too specific about it.

"MR. GUY [Counsel for Petitioner]: Okay. Then the order is that we do have to disclose the names of these ordinary witnesses?

"THE COURT: Correct. That includes the addresses. I believe they ask for addresses.

---

[2]The exhibits reveal that there were at least two prior sets of interrogatories, including a set served in November 1973, containing an interrogatory answered by petitioner, which asked for the identity of all persons with knowledge of the relevant facts.

"In addition, you have to tell briefly what they are going to testify to; for instance, eye witness will testify to seeing the accident happen, or policemen arrived at the scene an hour after the accident, questioned witnesses and made a police report, or something like that."

On August 12, 1976, petitioner filed its petition with this court, supported by a memorandum of points and authorities. On September 7, 1976, an alternative writ of mandate was granted by this court directing respondent court to vacate the order granting plaintiff's motion to compel further answers or show cause why a peremptory writ of mandate should not issue. Respondent superior court has filed no papers; plaintiff, however, has filed a memorandum of points and authorities in opposition to the petition.

The issues presented by this case are whether a party may be required to disclose during pretrial discovery (1) the identity of all of the ordinary, nonexpert witnesses it intends to call at the time of trial, and (2) the "nature and extent of the [anticipated] testimony" of these witnesses.

Petitioner contends that the superior court order should not be upheld because compelling disclosure of this information violates the work product doctrine. ■ Petitioner seeks the remedy of an extraordinary writ on the grounds: (1) that this is a question of first impression and of general importance to the profession, and (2) that "[o]nce the information is divulged, the harm occasioned by its release can never be repaired, making any alternative remedy a mere sham."

In opposition to the writ, plaintiff contends that the order compelling petitioner to answer the interrogatory "was not in excess of the Superior Court's jurisdiction" nor unduly burdensome because the information is "relevant, not specifically privileged" discoverable information and, as urged in his declaration in the court below, does not violate the work product doctrine.

Recent expressions of our Supreme Court support petitioner's request that we review this discovery order. Thus, in *Sav-On Drugs, Inc.* v. *Superior Court*, 15 Cal.3d 1 [123 Cal.Rptr. 283, 538 P.2d 739], where petitioner sought a writ of prohibition, our Supreme Court stated (15 Cal.3d at p. 5): "Preliminarily, it may be observed that the prerogative writ is not the favored method of reviewing discovery orders. Ordinarily the aggrieved party must raise the issue on direct appeal from a final

judgment. (*Pacific Tel. & Tel. Co.* v. *Superior Court,* 2 Cal.3d 161, 169 [84 Cal.Rptr. 718, 465 P.2d 854]; *Oceanside Union School Dist.* v. *Superior Court,* 58 Cal.2d 180, 185-186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439].) The premise upon which this general policy rests is that in the great majority of cases the delay due to interim review of discovery orders is likely to result in greater harm to the judicial process by reason of protracted delay than is the enforcement of a possibly improper discovery order. (2 Cal.3d at p. 170.) Nonetheless, we have concluded that the instant case comes within an exception recognized in *Pacific Tel., supra,* 2 Cal.3d at page 170, footnote 11 and more recently in *Roberts* v. *Superior Court,* 9 Cal.3d 330, 335-336 [107 Cal.Rptr. 309, 508 P.2d 309], to the effect that *we may properly entertain a petition for extraordinary relief when the petitioning party asserts, as here, that to compel an answer would violate a privilege.*"[3] (Italics added.)

Moreover, in *Rudnick* v. *Superior Court,* 11 Cal.3d 924, 928 [114 Cal.Rptr. 603, 523 P.2d 643], our Supreme Court stated: "The writ of mandate is a proper remedy for reviewing discovery procedures. (*Carlson* v. *Superior Court* (1961) 56 Cal.2d 431, 435-436 [15 Cal.Rptr. 132, 364 P.2d 308]; *Flora Crane Service, Inc.* v. *Superior Court* (1965) 234 Cal.App.2d 767, 775-776 [45 Cal.Rptr. 79].) We were impelled to issue the alternative writ in this case because we are presented with a question of first impression which is of general importance to the trial courts and to the profession, and in conjunction with which general guidelines can be laid down for future cases. (*Associated Brewers Distr. Co.* v. *Superior Court* (1967) 65 Cal.2d 583, 585 [55 Cal.Rptr. 772, 422 P.2d 332]; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; see *Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 335-336 [107 Cal.Rptr. 309, 508 P.2d 309]; *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 170, fn. 11 [84 Cal.Rptr. 718, 465 P.2d 854].)"

No California cases have been cited to us, nor have we found any that directly answer the questions herein raised as to whether (1) the identity of nonexpert witnesses whom the adverse party intends to call at trial, and (2) the nature and extent of those witnesses' expected testimony, fall

---

[3] While the work product "privilege" asserted by petitioner herein may not fall within a strict technical definition of evidentiary privilege, it is generally grouped with privileges such as the attorney-client privilege. Furthermore, the rationale of the *Sav-On* court should be applicable to the case at bench because "[o]nce the information is divulged, the harm occasioned by its release can never be repaired . . . ." (See *American Mut. Liab. Ins. Co.* v. *Superior Court,* 38 Cal.App.3d 579 [113 Cal.Rptr. 561], for a discussion of attorney-client and work product privileges and a thorough analysis of the various writs.)

within the definition of attorney's work product. The novel questions thus confronting us concern whether such information is protected from compelled disclosure and, if so, whether it is entitled to absolute or qualified protection.

Protection of the work product of an attorney is provided by statute. Code of Civil Procedure section 2016, subdivision (b), was amended in 1963 to include the following provision: "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

The same amendment added subdivision (g) in which the stated purpose of the rule appears: "It is the policy of this state (i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (ii) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

In *American Mut. Liab. Ins. Co.* v. *Superior Court,* 38 Cal.App.3d 579, 594 [113 Cal.Rptr. 561], the court stated: "The effect of the work product rule may be summarized by noting that it creates in California a qualified privilege against discovery of a general work product and an absolute privilege against disclosure of documents containing the attorney's 'impressions, conclusions, opinions, or legal theories.' "

The statute, however, does not define "work product." Thus, the determination of what work product is must be resolved by individual court determinations on a case-by-case basis. Since the term "work product" first found its way into legal nomenclature with the United States Supreme Court's landmark decision in *Hickman* v. *Taylor* (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385], we find its description helpful in outlining the contours of the doctrine. The *Hickman* court stated (329 U.S. at pp. 510-511 [91 L.Ed. at p. 462]): "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, *it is essential that a lawyer work*

*with a certain degree of privacy,* free from unnecessary intrusion by opposing parties and their counsel. *Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.* That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. *This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'work product of the lawyer.'* Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (Italics added.)

A practical guide for ascertaining its scope can be found in *Mack* v. *Superior Court,* 259 Cal.App.2d 7, 10 [66 Cal.Rptr. 280], as follows: "The 1963 amendments to Code of Civil Procedure section 2016 contain no definition of 'work product' and we must therefore resort to the cases and to the policy declared in Code of Civil Procedure section 2016, subdivision (g), in determining whether work product is involved here. Information regarding events provable at trial, or the identity and location of physical evidence, cannot be brought within the work product privilege simply by transmitting it to the attorney. But the cases indicate generally that *material of a derivative character,* such as diagrams prepared for trial, audit reports, appraisals, and other expert opinions, *developed as a result of the initiative of counsel in preparing for trial, are to be protected as work product.*" (Italics added.) (See *Southern Pac. Co.,* v. *Superior Court,* 3 Cal.App.3d 195, 196 [83 Cal.Rptr. 231].)

◼ *The Compelled Disclosure of the Identity of Nonexpert Witnesses Intended to Be Called at Trial Violates the Qualified Work Product Protection Doctrine*

Interrogatory No. 9 asked petitioner to "list the witnesses whom you intend to call at the time of trial herein."[4] Petitioner concedes that the

[4]The issue here relates solely to nonexpert witnesses. Information re expert witnesses had been sought in other interrogatories which had been fully answered. Consequently,

names of all percipient witnesses (i.e., those with knowledge of relevant facts) must be disclosed, but points out that the record establishes that it has already provided plaintiff with this information. Petitioner, however, contends that to compel it to identify which of these percipient witnesses will be called at trial violates the work product privilege. We agree. "The exact witness by whom a relevant fact may be proven at the trial must depend, after consideration of many questions, upon the judgment, discretion and mental processes of the legal counsel who will actively conduct the litigation." (*McNamara* v. *Erschen* (D.Del. 1948) 8 F.R.D. 427, 429.)

Clearly, the complete list of trial witnesses sought in this case is a derivative product developed as a result of the initiative of counsel in preparing for trial. The forced revelation of this list would violate the work product doctrine because counsel's decision in this respect is strategic; it necessarily reflects his evaluation of the strengths and weaknesses of his case. The threat of disclosure would inevitably chill his willingness to "investigate not only the favorable but the unfavorable aspects of such cases" (Code Civ. Proc., § 2016, subd. (g)) because his adversary could deduce, from the identity of the witnesses listed as having knowledge of relevant facts but left out of the trial list, where his case was weakest. A list of persons with knowledge of the relevant facts is quite different in its effect; it does not, of itself, reveal the strategy of the attorney. Section 2016, subdivision (b), expressly authorizes the use of discovery for the purpose of obtaining "the identity and location of persons having knowledge of relevant facts" and California case law has consistently so held such to be broadly and routinely discoverable. (See e.g., *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 372 [15 Cal.Rptr. 90, 364 P.2d 266]; *Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172, 179 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71]; *Smith* v. *Superior Court,* 189 Cal.App.2d 6, 12 [11 Cal.Rptr. 165, 88 A.L.R.2d 650]; *City & County of S. F.* v. *Superior Court,* 161 Cal.App.2d 653, 655 [327 P.2d 195].)

we are not here concerned with the related but different question posed by demands for discovery relating to experts.

"Discovery of the identity of expert witnesses who are expected to testify at the trial, however, presents entirely different policy considerations. Since the opinions of expert witnesses actually constitute evidence in the case, disclosure of their identity as a prelude to effective trial preparation warrants adequate scope for pretrial discovery of who they are and of their qualifications." [Fn. omitted.] (13 Grossman & Van Alstyne, Cal. Discovery Practice, Identity of Trial Witnesses, § 51, p. 157.)

In issue, then, is whether this provision authorizes, or should authorize, the compelled discovery of witness lists naming all those intended to be called at trial. The argument for the view that names and addresses of persons the other party intends to be called as trial witnesses should be discoverable, sometimes referred to as eliminating the "sporting theory of litigation," is made in 4 Moore's Federal Practice (2d ed. 1976) Identity, Location of Witnesses, section 26.57(4), pages 26-211 to 26-214:

"The argument in favor of disclosure, subject, of course, to such judicial restriction or limitation as is warranted by the circumstances of the particular case, is as follows: Rule 26(b) abandons the old chancery rule that under a bill for discovery a party could not be compelled to disclose the names of witnesses whom he intended to or might introduce at the trial. The Federal Rules approve the view of William Howard Taft, expressed when he was a state judge in Ohio, that 'witnesses do not belong to one party more than to another.' The broad purpose behind the deposition and discovery rules was to take the sporting element out of litigation. To this end the parties are entitled to obtain any and all factual data, not privileged, that is useful in preparing a claim or defense. Rule 26(b) clearly does not confine itself to a discovery of relevant or competent testimony that would be admissible at the trial; 'the identity and location of persons having knowledge of any discoverable matter' is not necessarily an item of relevant and competent evidence. *The sporting theory of litigation thrives on surprise*—including surprise witnesses. *Elimination of this sort of tactics is a legitimate purpose of the discovery rules,* especially when considered in connection with Rule 16 on pre-trial proceedings. These rules, taken together, give the courts broad powers to simplify litigation and to avoid surprise. Since a party clearly can ascertain the names of all persons who *might* be witnesses, under the specific provision for discovery as to 'the identity and location of persons having knowledge of any discoverable matter,' no good reason is seen why he should not have the right to learn, at some reasonable time before trial, which of these persons *will* be witnesses. The adverse party need not be ineluctably bound to use all of the witnesses at the trial, nor precluded from using other witnesses if their existence or the relevance of their testimony is discovered at a later time, if notice is given or circumstances otherwise justify it.

"To give an example: Suppose that the depositions of X, Y and Z have been taken and their testimony supports a defense of the defendant (D).

Plaintiff (P) also knows that W has some knowledge of the matter in litigation. P does not want to use W as a witness, but if D is going to use him, P in order to protect himself should take W's deposition or be prepared to impeach W in case he is called at the trial. If D can be required at the proper time to state what witnesses he intends to use at the trial, and the statement does not include W, then P need not go to the expense of taking W's deposition nor be prepared with impeaching testimony. [Fns. omitted.]" (Italics added.)

We are not convinced that the sporting theory of litigation must be so entirely eliminated. Diligence in preparing one's own case, rather than depending on an adversary's efforts, is a value expressly approved in the statutory policy statement of Code of Civil Procedure section 2016, subdivision (g).

Many federal cases hold disclosure of witness lists should not be compelled. The reasons cited therein are summarized by Judge Weinfeld in *Fidelis Fisheries, Ltd.* v. *Thorden* (S.D.N.Y. 1952) 12 F.R.D. 179, as quoted in 4 Moore's Federal Practice, section 26.57(4), footnote 11, pages 26-209 to 26-210:

" 'The objectives of the deposition-discovery procedure have been defined as (1) to narrow and clarify the basic issues between the parties; and (2) to ascertain facts, or information as to the existence of facts, relative to those issues. Hickman v. Taylor, 329 U.S. 495, 501.

" 'I believe that these essential purposes are not necessarily achieved by requiring a party, in the absence of unusual circumstances, to list in advance the names of witnesses he intends to call upon the trial. Moreover, by requiring a party to furnish such a list, he may be placed at unnecessary disadvantage.

" 'As to the first point, if we assume that the libelant knows of ten witnesses but for reasons satisfactory to trial counsel he intends to rely upon five to establish his case, the answer to the interrogatory as framed would give to the respondent only the names of those five witnesses. Omitted from the list would be the remaining five witnesses who may have information of much value [or] whose testimony may lead to information of much value, in aid of the respondent's case. Thus, a

major purpose of the deposition-discovery procedure would be frustrated rather than advanced by the service of such a list. On the other hand, *if the respondent received from the libelant,* as specifically set forth in Rule 26(b), *a statement of "the identity and location of persons having knowledge of relevant facts,"* without regard to whether or not his adversary planned to call all or any number of them upon the trial, respondent would be in a position to interview witnesses, obtain their testimony under the Rules, attempt to discover leads "as to where evidence may be located" and use every facility for full and thorough preparation for trial. *The service of such a list, rather than one of proposed trial witnesses, serves to eliminate "the sporting theory of justice." '*

"Continuing, Judge Weinfeld stated:

" 'Moreover, *there is inherent disadvantage to a party to compel him to state in advance of trial those witnesses he intends to call.* In the practical conduct of trials, circumstances may cause an experienced trial lawyer to dispense with a witness' testimony after first contemplating it. Reasons readily suggest themselves. The testimony of a witness may be cumulative; his version may be hearsay or inadmissible upon the trial, although for purposes of deposition-discovery procedure, entirely relevant to the subject matter of the action; a witness may have turned hostile; a witness, as sometimes witnesses do, may have suffered a lapse of memory on the eve of trial; or his testimony, while generally supporting the version of a party's other witnesses, may in a single aspect differ and be contradictory and so harmful rather than helpful to the theory of his case. Thus, a litigant would be placed in the position of explaining away the failure to call an announced witness when events subsequent to the service of the list warranted dispensing with his testimony, especially if the other party were to contend that he was misled and had relied upon his adversary to produce the witness at the time of trial.' " (Italics added.)

We agree. The legitimate interests and purposes of discovery generally are amply protected by the requirement that an adverse party is entitled to the identity and location of all persons with knowledge of the relevant facts. The California statutory provision, codified in 1957 in Code of Civil Procedure section 2016, subdivision (b), with the adoption of the Discovery Act, was taken from federal rule 26(b) (now 26(b)(1)). Its basis is that persons who have relevant knowledge are not to be considered the witnesses of any particular party to the litigation.

Ensuring the availability to all parties of the right to contact and to take depositions of these witnesses provides adequate safeguards against surprise or false testimony. Furthermore, knowledge of the identity of these possible witnesses permits investigation into the facts while encouraging diligence on the part of both attorneys.

The distinction we have drawn between persons having knowledge of relevant facts and witnesses who will be called to testify at the trial is well recognized. (*Employers Mut. Liability Ins. Co. of Wis.* v. *Butler* (Tex.Civ. App. 1974) 511 S.W.2d 323, 324-325; *Griffin* v. *Memphis Sales & Manufacturing Company* (N.D. Miss. 1965) 38 F.R.D. 54, 55-56; *Magelssen* v. *Local Union No. 518, etc.* (W.D. Mo. 1963) 32 F.R.D. 464, 465-466; *Frankel* v. *Sussex* (1950) 45 Del. (6 Terry) 264 [71 A.2d 754, 755].) According to the great weight of authority, pretrial discovery rules such as ours which allow the discovery of the identity of persons with knowledge of relevant facts do not sanction compelling the disclosure of the nonexpert witnesses intended to be called at trial.[5] See the following, and cases therein cited: Annot. (1968) Pretrial Discovery—Witnesses—Identity 19 A.L.R.3d 1114, 1118-1121; 2A Barron & Holtzoff, Federal Practice and Procedure, § 766, pp. 305-306; 4 Moore's Federal Practice, Identity, Location of Witnesses, section 26.57(4), page 26-207, footnote 10; see also *Employers Mut. Liability Ins. Co. of Wis.* v. *Butler, supra,* 511 S.W.2d at p. 325; *Grant* v. *Huff* (1970) 122 Ga.App. 783 [178 S.E.2d 734,

[5]While the federal courts are divided, most would not compel disclosure. (4 Moore's Federal Practice, *supra,* § 26.57(4), p. 26-207, fn. 10.) Some of these federal courts may, however, require the exchange of witness lists at the pretrial conference. Thus, in *Brennan* v. *Engineered Products, Inc.* (8th Cir. 1974) 506 F.2d 299, 303, footnote 2, the court said:

"It is settled law that a party in a civil action can ordinarily discover from his opponent the names of those persons known to have information relevant to the lawsuit. . . . *It is equally settled that discovery is not ordinarily the proper stage in litigation to compel from an opponent the names of his prospective witnesses. See,* 8 Wright & Miller, Federal Practice and Procedure § 2013 at 106-107 (1970). *See also,* Wirtz v. Continental Finance & Loan Co. of West End, 326 F.2d 561, 564 (5th Cir. 1964); Wirtz v. Hooper-Holmes Bureau Inc., 327 F.2d 939, 942-943 (5th Cir. 1964) (dictum); Wirtz v. B. A. C. Steel Products, Inc., 312 F.2d 14, 16 (5th Cir. 1962).

"Since the period between the order to produce and the trial date was almost three months, *we view it as a discovery and not an immediate pretrial order.* We do not say that a District Court may never compel compilation or production of witness lists at the discovery stage. But we do note that it is rare for a trial court to do so, and the infrequency of such an order should be borne in mind when assessing the propriety of the discovery order here." (Italics added.)

Where pretrial rules provide for the exchange of witness lists, the objection to such interrogatories becomes merely an objection to the timing of the disclosure. However, under California law, pretrial conferences are discretionary, and California Rules of Court, rule 211(e) provides: "At the pretrial conference a party shall not be required to disclose his witnesses, such disclosures being governed by discovery proceedings."

735]; *Frankel* v. *Sussex, supra,* 71 A.2d at page 755; *State* v. *Jensen* (Mo. 1965) 395 S.W.2d 143, 145-146; *Atlantic Northern Airlines* v. *Schwimmer* (1953) 12 N.J. 293 [96 A.2d 652, 659]; *Muir* v. *Anderson* (1951) 14 N.J. Super. 231 [81 A.2d 512, 513]; *Bell* v. *Swift & Company* (5th Cir. 1960) 283 F.2d 407, 409; *United Ben. Life Ins. Co.* v. *Schott* (1944) 296 Ky. 789 [177 S.W.2d 581, 584, 150 A.L.R. 1359]; *Aetna Life Ins. Co.* v. *Little Rock Basket Co.* (E.D. Ark. 1953) 14 F.R.D. 383, 384.

Moreover, the Legislature had the opportunity to permit this sort of discovery of intended trial witnesses when it codified the work product rule in 1963 by amending the original 1957 provision which provided for the right to discover the identity and location of persons with knowledge of relevant facts. (Code Civ. Proc., § 2016, subd. (b).) Despite the fact that there is no California appellate case law squarely on point holding that the identity of nonexpert witnesses intended to be called at trial is nondiscoverable, California commentators generally assumed and categorically stated that a party "cannot be compelled to disclose the identity of lay witnesses who will testify at trial." (Brosnahan, Jones & Rantzman, Cal. Civil Discovery Practice (Cont.Ed.Bar 1975) Interrogatories, § 8.10, p. 336; Powers, *A Guide to Interrogatories in California Practice,* 48 So.Cal.L.Rev. 1221, 1232, 1253.) Such a list as sought here generally has been deemed nondiscoverable in California practice. (See 13 Grossman & Van Alstyne, Cal. Discovery Practice (1972) § 30, p. 84.) According to Louisell (Louisell, Boalt & Wally, Modern Cal. Discovery (2d ed. 1972) Interrogatories to Parties, § 5.12, p. 336), "most California courts do not require this disclosure because they believe such to be in violation of the attorney's work product." Furthermore, former rule 8e of the California Rules of Court, in force when the Legislature enacted the discovery amendment in 1963, specifically forbade requiring a list of intended witnesses at the pretrial conference. There was also at least one case (*Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172, 179, fn. 1 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71]) which assumed in dictum that such discovery was not permissible.

Faced with this clear evidence that the general understanding and practice in California was that disclosure could not be compelled under the existing statute, the Legislature enacted new legislation. These new provisions, however, did not increase the availability of discovery or broaden the wording of that section. Instead the enactments codified a work products doctrine which restricts discovery and states that the

policy shall be to protect the attorney's privacy. This clearly indicates that such a broad construction of the statutory language to encompass a requirement to disclose intended trial witnesses would violate the patent legislative intent to the contrary.

We recognize that there may be special circumstances under which the identity of persons with knowledge of the relevant facts will not suffice to avoid injustice and a party may require additional information. Disclosure with respect to the intended availability of a particular witness at the trial might be justified by special circumstances relating to such witness.[6]

All we hold is that the petitioner is entitled to a qualified work product privilege. The identity of the intended trial witnesses cannot be compelled without a showing that denial of such discovery will "unfairly prejudice the party seeking discovery or will result in an injustice." (Code Civ. Proc., § 2016, subd. (b).)

The plaintiff contends that the propounder of interrogatories has no burden to show good cause for requiring the requested information. (*Coy* v. *Superior Court,* 58 Cal.2d 210, 220-221 [23 Cal.Rptr. 393, 373 P.2d 457, 9 A.L.R.3d 678].) He further claims that the propounder of interrogatories can demand answers as a matter of right unless the responding party states valid objections thereto. (*West Pico Furniture Co.* v. *Superior Court,* 56 Cal.2d 407, 422 [15 Cal.Rptr. 119, 364 P.2d 295].) Petitioner has, however, raised the objection that this information is protected from discovery because it is the work product of the attorney. We find petitioner's objection valid. Moreover, the statutory amendments to the Discovery Act in 1963 specifically placed the burden of proof on the party seeking discovery once the party resisting discovery raised the objection of work product privilege. (See Code Civ. Proc., § 2016, subd. (b).)

In the case at bench, plaintiff has made no showing whatever of facts to overcome the qualified privilege. He merely stated his contention that the information was discoverable and not privileged. Without the required showing of unfair prejudice, the order to compel petitioner to respond and list all the witnesses intended to be called at trial cannot stand.

---

[6]For example, an opposition witness whose deposition has been taken, and can be used because of his unavailability, may not have been adequately cross-examined in the light of present knowledge. If he is not going to be produced at the trial by the opposition, steps must be taken to ensure further cross-examination.

### ■ *Compelled Disclosure of Witnesses' Anticipated Testimony Violates the Absolute Work Product Privilege*

Interrogatory No. 9 also called for petitioner to describe the "nature and extent of the testimony which will be offered by or through said witnesses." Petitioner contends, and we agree, that an even more compelling argument can be made that this is protected work product. Code of Civil Procedure section 2016, subdivision (b), provides, among other things, that "any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances."

If the list of witnesses were discoverable, a description of the "nature" (e.g., eyewitness, expert, reputation) of the testimony might also be discoverable as a qualified work product. The interrogatory, however, also calls for the attorney to describe "the extent" of the expected testimony of each witness. Such an interrogatory clearly calls for production of a writing reflecting the attorney's impressions, conclusions and opinions and thus falls within the absolute work product privilege. This is particularly evident on the facts of this case where the court at the hearing on the motion to compel the answer to the interrogatory said: "In addition, you have to tell briefly what they are going to testify to; for instance . . . policemen arrived at the scene an hour after the accident, questioned witnesses and made a police report . . . ." The petitioner thus must give his conclusions as to what the witness would say.

In *Sheets* v. *Superior Court,* 257 Cal.App.2d 1, at pp. 10-11 [64 Cal.Rptr. 753], disclosure of attorney-prepared analyses and evaluations of an accountant's written report and an estimator's oral reports was held improper. While the issue was decided on the basis of the attorney-client privilege, the court indicated that had the issue of work product been raised in the trial court, it would have ruled that the analyses were in the category of work product, "not discoverable under any circumstances." (257 Cal.App.2d at p. 10, fn. 2.)

In *People* v. *Boehm,* 270 Cal.App.2d 13, 21 [75 Cal.Rptr. 590], it was contended that "the court erred in refusing to allow inspection of '*notes made by the district attorney*' relating to 'notes, memoranda, or records pertaining to the interviews, dates [and] persons present between the district attorney's office' and the [particular] immunized witness." The

court ruled that the desired information was covered by the work product privilege.

The above authorities make it clear that if an analysis of each witness' testimony had already been prepared by petitioner's attorney, it would have been absolutely privileged. The fact that under the court's order such analysis must be prepared specifically for submission to plaintiff does not justify a contrary result. The same attorney function is involved in both instances, and the writings in each case must necessarily reflect the attorney's impressions, conclusions and opinions.

We hold that the order entered compelling the petitioner to answer Interrogatory No. 9 is contrary to the clear legislative proscriptions against disclosure and discoverability of writings embodying an attorney's impressions, conclusions, opinions, research or theories "under any circumstances." Further, its enforcement would thwart the legislatively expressed policy "to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases." (Code Civ. Proc., § 2016, subd. (g).) Such an order, whatever its momentary advantage, is not calculated to improve the adversary process.

Let a peremptory writ of mandate issue as prayed.

Ford, P. J., and Allport, J., concurred.