182 Cal.App.4th 758 (2010)
DEBRA COITO, Petitioner,
v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
STATE OF CALIFORNIA, Real Party in Interest.
No. F057690.
Court of Appeals of California, Fifth District.
March 4, 2010.
*761 Law Offices of Carcione, Cattermole, Dolinski, Okimoto, Stucky, Ukshini, Markowitz & Carcione, Joseph W. Carcione, Jr., Gary W. Dolinski and Neal A. Markowitz for Petitioner.
No appearance for Respondent.
Edmund G. Brown, Jr., Attorney General, James M. Schiavenza, Assistant Attorney General, Steven M. Gevercer and Peter A. Meshot, Deputy Attorneys General, for Real Party in Interest.

OPINION
DAWSON, J.
We consider the question whether the statement of a witness, taken in writing or otherwise recorded verbatim, by an attorney or the attorney's representative, is entitled to the protection of the California work product privilege. We will follow the weight of authority and find such statements not protected and therefore available through discovery. The superior court here followed contrary language from Nacht & Lewis Architects, Inc. v. Superior Court (1996) 47 Cal.App.4th 214 [54 Cal.Rptr.2d 575] (Nacht & Lewis). We will grant the requested writ of mandate and direct the superior court to enter an order granting the discovery at issue.

FACTS AND PROCEEDINGS
Jeremy Wilson, the 13-year-old son of petitioner Debra Coito, died in a drowning incident in the Tuolumne River in Modesto, California, on March 9, 2007. Petitioner filed her complaint for wrongful death thereafter. She named various defendants, including the State of California. The Department of Water Resources is the agency defending for the state, represented by the Attorney General of California. The action is currently before this court on a petition for writ of mandate filed by petitioner. The state is real party in interest.
At the time of the drowning, six other juveniles were present at the site and witnessed what occurred. Allegations have been made of criminal conduct by all of the juveniles, including Jeremy Wilson, immediately preceding the drowning. On November 12, 2008, after codefendant City of Modesto had noticed the depositions of five of the six juvenile witnesses, counsel for the state sent two investigators, both special agents from the California Department of Justice, Bureau of Investigation, to interview and take recorded statements *762 from four of the juveniles.[1] Counsel for the state had, according to a declaration filed below in this matter, "provided the investigator with questions [he] wanted answered." The juveniles' statements are each saved on a separate compact disc (CD). So is a memo prepared for the attorney for the state by one of the investigators, after conclusion of the interviews.
On January 27, 2009, the City of Modesto's deposition of one of the four interviewed witnesses commenced. Counsel for the state used the content of the witness's recorded statement to examine him at the deposition.
On February 5, 2009, petitioner served the state with supplemental interrogatories and document demands. (Code Civ. Proc.,[2] §§ 2030.070, 2031.050.) The interrogatories included Judicial Council form interrogatory No. 12.3, by which petitioner sought the names of and information about witnesses from whom written or recorded statements had been obtained.[3] Through the demand for production of documents, petitioner sought discovery of the four recorded witness statements. Petitioner did not seek discovery of the memorandum concerning the witness interviews, prepared by one of the investigators for counsel for the state. The state objected to the requested discovery, based on the attorney work product privilege. (§ 2018.030.) After meeting and conferring with counsel for the state, counsel for petitioner filed a motion to compel answer to interrogatory No. 12.3 and production of the recorded witness statements. (§§ 2030.300, 2031.310.) In support of the motion to compel, petitioner filed declarations from two of the interviewed witnesses in which both declared, among other things, that they did not intend that their recorded statements be confidential. The state filed opposition to the motion to compel, relying primarily on the opinion in Nacht & Lewis.
After a hearing on April 10, 2009, the superior court issued a written order denying petitioner's motion to compel. The court relied on Nacht & Lewis for the proposition that the list of potential witnesses from whom written or *763 recorded statements had been obtained, sought by way of form interrogatory No. 12.3, would constitute qualified attorney work product, and the recorded witness statements would be entitled to absolute work product protection.[4] The court did order production of the statement of the witness whose deposition had been taken, on the basis that the state had waived work product protection by using the content of the statement to examine the witness at his deposition.
Petitioner filed her application for writ of mandate on May 26, 2009. We issued an order to show cause, directed the state to file a response to the petition, and heard oral argument.[5] We will grant the petition.

DISCUSSION

I. The Work Product Privilege

(1) In California, the attorney work product privilege[6] is codified in part 4, title 4, chapter 4 of the Civil Discovery Act contained in the Code of Civil Procedure. (§§ 2016.010 et seq. [Civil Discovery Act], 2018.010 et seq. [Attorney Work Product].) Section 2018.030 divides attorney work product into two categoriesabsolute and qualified work product. Subdivision (a) of section 2018.030 provides absolute protection from discovery of any "writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories . . . ." Such writings are "not discoverable under any circumstances." (Ibid.) The term "writing" is broadly defined to include any form of recorded information, including audio recordings. (§ 2016.020, subd. (c); see Evid. Code, § 250.) A classic example of a writing that is protected by the absolute privilege is a memorandum written by an attorney, after taking a statement from a potential witness, summarizing the attorney's *764 impressions and conclusions. (See, e.g., People v. Boehm (1969) 270 Cal.App.2d 13, 21 [75 Cal.Rptr. 590].)[7]
Subdivision (b) of section 2018.030 is a catchall for attorney work product that does not fall within subdivision (a). It provides qualified protection: such work product "is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense . . . ."
(2) Neither subdivision (b) of section 2018.030 nor any other provision of the Civil Discovery Act provides a description or a definition of what is and what is not qualified work product. Accordingly, the courts have had to proceed on a case-by-case basis. In doing so, the courts have focused on the distinction between "derivative" or "interpretative" material on the one hand, and "nonderivative" or "evidentiary" material on the other. (See, e.g., Mack v. Superior Court (1968) 259 Cal.App.2d 7, 10-11 [66 Cal.Rptr. 280] (Mack); Fellows v. Superior Court (1980) 108 Cal.App.3d 55, 68-69 [166 Cal.Rptr. 274]; Rodriguez v. McDonnell Douglas Corp. (1978) 87 Cal.App.3d 626, 647 [151 Cal.Rptr. 399].) Generally speaking, work product protection extends only to "derivative" material, which is material "created by or derived from an attorney's work on behalf of a client that reflects the attorney's evaluation or interpretation of the law or the facts involved." (2 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶ 8:235, p. 8C-69 (rev. # 1, 2006).) In contrast, "nonderivative" material is that which is "only evidentiary in character." (Ibid.) As such it is "not protected even if a lot of attorney `work' may have gone into locating and identifying [it]." (Ibid., citing Mack, supra, at p. 10.) Examples of derivative materials include "diagrams prepared for trial, audit reports, appraisals, and other expert opinions, developed as a result of the initiative of counsel in preparing for trial." (Mack, at p. 10.) Examples of nonderivative or evidentiary materials include the identity and location of physical evidence (ibid.), and the identity and location of witnesses. (City of Long Beach v. Superior Court (1976) 64 Cal.App.3d 65, 73 [134 Cal.Rptr. 468].) A guiding principle in this analysis is that "[i]nformation regarding events provable at trial, or the identity and location of physical evidence, cannot be brought within the work product privilege simply by transmitting it to the attorney." (Mack, supra, at p. 10.)
Section 2018.020 states the policy underlying California's work product privilege:
"It is the policy of the state to do both of the following:
*765 "(a) Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases.
"(b) Prevent attorneys from taking undue advantage of their adversary's industry and efforts."
The courts must balance these purposes with those underlying the larger Civil Discovery Act (§ 2016.010 et seq.), which include: "(1) [giving] greater assistance to the parties in ascertaining the truth and in checking and preventing perjury; (2) [providing] an effective means of detecting and exposing false, fraudulent and sham claims and defenses; (3) [making] available, in a simple, convenient and inexpensive way, facts which otherwise could not be proved except with great difficulty; (4) [educating] the parties in advance of trial as to the real value of their claims and defenses, thereby encouraging settlements; (5) [expediting] litigation; (6) [safeguarding] against surprise; (7) [preventing] delay; (8) [simplifying] and narrow[ing] the issues; and, (9) [expediting] and facilitat[ing] both preparation and trial." (Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 376 [15 Cal.Rptr. 90, 364 P.2d 266] (Greyhound).)
(3) In order to accomplish these various purposes, the Civil Discovery Act "must be construed liberally in favor of disclosure unless the request is clearly improper by virtue of well-established causes for denial. . . . `Only strong public policies weigh against disclosure.'" (Greyhound, supra, 56 Cal.2d at p. 377, quoting Chronicle Publishing Co. v. Superior Court (1960) 54 Cal.2d 548, 572 [7 Cal.Rptr. 109, 354 P.2d 637].)

II. Work Product and Witness Statements

(4) The courts have several times, and in differing contexts, addressed the question whether witness statements are subject to discovery. They have clearly held that statements prepared by a witness and then turned over to an attorney are not the attorney's work product. (See, e.g., Wellpoint Health Networks, Inc. v. Superior Court (1997) 59 Cal.App.4th 110, 119 [68 Cal.Rptr.2d 844].) A more difficult problem is presented where the witness's statement has been taken by the attorney or by the attorney's representative.[8] *766 In such situations, it can surely be said that the witness statement is in part the product of the attorney's work. That is not to say, however, that the witness statement is entitled to work product protection. In fact, the courts of California have not so held.[9]
In Greyhound, supra, 56 Cal.2d 355, the trial court granted the plaintiff's request for production of statements taken from independent, percipient witnesses to an accident that was the subject of the litigation. The statements had been taken by adjusters and investigators for use by the defendant's attorneys. The defendant asserted error on the basis, among others, that the statements were attorney work product. (Id. at pp. 386-387.) The court stated that "the work product privilege does not exist in this state." (Id. at p. 401.)[10] But it also quoted extensively and with apparent approval from the United States Supreme Court's opinion in Hickman v. Taylor (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385], where the high court distinguished, under federal discovery rules, between a request for production of an attorney's "written memoranda of impressions received from oral statements and conversations had with independent witnesses" and a request for discovery of written statements taken from independent[11] witnesses. (Greyhound, at p. 400, citing Hickman, at p. 511.) The Greyhound court upheld the trial court's order that the defendant provide discovery of the witness statements. (Greyhound, at p. 401.)[12]
Subsequent to its opinion in Greyhound, the California Supreme Court again recognized that statements taken from independent witnesses are subject to discovery. In Beesley v. Superior Court (1962) 58 Cal.2d 205 [23 Cal.Rptr. 390, 373 P.2d 454], the court reversed the trial court's denial of discovery, finding that the requisite "good cause" for discovery had been shown.[13] In Christy v. Superior Court (1967) 252 Cal.App.2d 69, 71-72 [60 *767 Cal.Rptr. 85], this court did the same. No argument was made in either case that witness statements were attorney work product.
In subsequent cases, the question whether witness statements taken by attorneys or their representatives constitute work product has been addressed more directly.
In Kadelbach v. Amaral (1973) 31 Cal.App.3d 814 [107 Cal.Rptr. 720], the appellants argued that "written or recorded statements of witnesses made to an attorney" were protected by the work product privilege codified in the statutory predecessor to current section 2018.030. (Kadelbach, supra, at p. 822.) The court rejected the contention on the basis that witness statements, even those taken by an attorney, are not derivative but are evidentiary in nature. (Ibid.; see also Fellows v. Superior Court, supra, 108 Cal.App.3d at p. 69 ["`Major categories of nonderivative evidentiary material excluded from the concept of an attorney's work product include . . . written or recorded statements of prospective witnesses.'"].)
In People v. Williams (1979) 93 Cal.App.3d 40 [155 Cal.Rptr. 414], the appellate court reviewed certain notes made by the prosecutor after interviewing a victim witness.[14] The appellate court found that the notes were "simply the prosecutor's summary of statements of . . . the victim," and it "is well-settled that there is no attorney's work-product privilege for statements of witnesses since such statements constitute material of a nonderivative or noninterpretative nature. [Citations.]" (Id. at pp. 63-64.)
(5) Notes made by the interviewing attorney or attorney's representative usually are treated as work product, entitled to absolute protection, because they reflect the impressions, conclusions or opinions of the interviewer. (See, e.g., Rodriguez v. McDonnell Douglas Corp., supra, 87 Cal.App.3d at p. 648.) In Rodriguez, the sought-after discovery was "an amalgam of the recorded statements of a witness and comments" made by the person who interviewed the witness for the attorney. (Id. at p. 647.) The court held the amalgam should be protected by the absolute work product privilege, but it did so only after noting that the witness statements would not be considered work product were they not inextricably "intertwined" with the portion of the amalgam that was absolutely protected work product. (Id. at p. 648; see also Rico v. Mitsubishi Motors Corp., supra, 42 Cal.4th at p. 814 [citing Rodriguez v. McDonnell Douglas Corp. with approval in dicta].)
We proceed to a discussion of Nacht & Lewis and the trial court's ruling here.

*768 III. Nacht & Lewis and the Superior Court's Ruling

In Nacht & Lewis, the plaintiff sought production of witness statements and propounded form interrogatory No. 12.3the same two discovery requests at issue in the present case. The appellate court was unsure whether the sought-after witness statements had been made by the witnesses on their own initiative and then turned over to counsel for the defense or, instead, had been taken by counsel. As to the former, the court noted that no work product protection was available either as to the statements or as to a list of such witnesses. (Nacht & Lewis, supra, 47 Cal.App.4th at pp. 217-218.) As to the latter, however, the court stated: "A list of the potential witnesses interviewed by defendants' counsel which interviews counsel recorded in notes or otherwise would constitute qualified work product because it would tend to reveal counsel's evaluation of the case by identifying the persons who claimed knowledge of the incident from whom counsel deemed it important to obtain statements. Moreover, any such notes or recorded statements taken by defendants' counsel would be protected by the absolute work product privilege because they would reveal counsel's `impressions, conclusions, opinions, or legal research or theories' . . . ." (Id. at p. 217, quoting People v. Boehm, supra, 270 Cal.App.2d at pp. 21-22.)
This is precisely the language upon which the superior court relied in ruling against petitioner below. In the court's written ruling, it quoted this language from Nacht & Lewis, underlining certain portions for emphasis.

IV. Analysis

The opinion in Nacht & Lewis is a cursory one; it contains no analysis to support the above quoted language and fails entirely to acknowledge the long line of contrary precedent discussed above.[15] Neither does it consider nor weigh the purposes of the work product privilege and the Civil Discovery Act, as required by Greyhound, supra, 56 Cal.2d at page 377 ("`Only strong public policies weigh against disclosure.'").
We agree with petitioner's argument that witness statements are classic evidentiary material. They can be admitted at trial as prior inconsistent statements (Evid. Code, § 1235), prior consistent statements (id., § 1236), or past recollections recorded (id., § 1237). Yet, if the statements are not subject to discovery, the party denied access to them will have had no opportunity to *769 prepare for their use. Moreover, a witness statement could contain information favorable to the party denied access, who otherwise could use the statement to refresh the witness's recollection, impeach the witness's testimony, or rehabilitate the witness after cross-examination. These impacts on the quest for truth simply are not justified by the policy of encouraging lawyers to prepare their cases for trial or the policy of protecting the diligent attorney from others who would take advantage of his or her industry. (§ 2018.020.) "The purpose of the [work product] doctrine is to prevent incompetent counsel from taking unfair advantage of his adversary's efforts in preparation for trial, not to suppress relevant testimony which happened to have been obtained by the opposition." (Jasper Construction, Inc. v. Foothill Junior College Dist. (1979) 91 Cal.App.3d 1, 16 [153 Cal.Rptr. 767].)
(6) For those reasons, we choose to follow the weight of authority and hold that written and recorded witness statements, including not only those produced by the witness and turned over to counsel but also those taken by counsel, are not attorney work product. Because such statements are not work product, neither is a list of witnesses from whom statements have been obtained (the list requested by form interrogatory No. 12.3).

V. Qualified Work Product

The state argues that, should we reject absolute work product protection for witness statements taken by counsel, we should hold they are subject to qualified work product protection. We reject this notion for the following reasons. The basis of the state's argument for at least qualified work product protection is that the choice of which witnesses to interview, and the questions asked during the course of an interview, will reflect counsel's impressions, conclusions, or theories about the case. But this general proposition, even if we accept it as true, is too broad to be useful. In fact, it may be the unusual case in which either the questions asked in a witness interview, or the choice of which witnesses to interview, will reveal any significant tactical or evaluative information. What, for example, of the situation in which an attorney sends an investigator to interview all witnesses listed in a police report, and the investigator asks few if any questions while taking the witnesses' statements? Clearly, these statements would reveal nothing significant about the attorney's impressions, conclusions, or opinions about the case. Yet the state asks that we treat all witness statements taken by an attorney or the attorney's representative as work product as a matter of law.
We do acknowledge that an attorney could reveal his or her thoughts about a case by the way in which the attorney conducts a witness interview. We are confident, however, that competent counsel will be able to tailor their interviews so as to avoid the problem should they choose to do so.
*770 We also note that, if there were something unique about a particular witness interview that revealed interpretive rather than evidentiary information, nothing about our holding would prevent the attorney resisting discovery from requesting an in camera hearing before the superior court and the opportunity to convince that court that the interview or some portion of it should be protected as qualified work product. (See Wells Fargo Bank v. Superior Court (2000) 22 Cal.4th 201, 215 [91 Cal.Rptr.2d 716, 990 P.2d 591] ["courts have recognized that inspection in camera is an appropriate way of determining whether documents are entitled to protection as work product"]; BP Alaska Exploration, Inc. v. Superior Court, supra, 199 Cal.App.3d at p. 1261 [appellate court remanded to superior court for determination of work product on an item-by-item basis].)[16]
In the present case, however, no such in camera hearing was requested. The state offered nothing factual about the sought-after witness statements other than counsel's assertion that he "provided the investigator with questions [he] wanted answered." This vague information provides no basis upon which to find that the witness statements produced either are or include anything but evidentiary material.

VI. Conclusion

(7) Because the state failed to show that the recorded statements of the four juvenile witnesses were protected work product, we conclude that the trial court erred in denying petitioner's motions to compel.[17]

DISPOSITION
We issue a peremptory writ of mandate and direct that the trial court (1) vacate its discovery order denying petitioner's motions to compel a further response to her demand for production of witness statements and further response to form interrogatory No. 12.3, and (2) enter an order granting said motions to compel. Costs are awarded to petitioner.
Levy, Acting P.J., concurred.
*771 KANE, J. Concurring and Dissenting.
The issues presented in this writ petition have required a thorough consideration of the work product doctrine as it relates to witness statements recorded by an attorney in the preparation of a client's case.[1] Both the majority and I have done so, yet we have reached different conclusions. In contrast to the majority opinion, I have come to the conclusion that such witness statements are protected as qualified work product and that the following work product privilege principles apply in this case:
First, the absolute work product privilege is not applicable to a recorded witness statement merely because it was recorded by an attorney or his agent. Rather, the absolute privilege applies, if at all, to the attorney's "impressions, conclusions, opinions, or legal research or theories" (Code Civ. Proc., § 2018.030, subd. (a)[2]), and matters inextricably intertwined therewith.
Second, where an attorney (or the attorney's agent), in the course of preparing or investigating a client's case, interviews a percipient witness[3] therein and records what that witness said, the recording constitutes qualified work product of the attorney. While such a recording is protected by the qualified privilege, it is still potentially discoverable depending on a moving party's showing of need under section 2018.030, subdivision (b).
Third, where a party objects to form interrogatory No. 12.3 based on the qualified work product privilege, the objection should be overruled where, as here, the objecting party failed to make a foundational showing that a response would actually disclose matters protected by the work product privilege (e.g., significant tactical information about the case).
Here, the trial court applied the wrong legal standard when it assumed that all witness statements recorded by an attorney (or his agent) were absolutely privileged as a matter of law. Because of that mistaken assumption, the trial court gave no further consideration to the question of whether, or to what extent, discovery of the witness statements was available. The trial court did not evaluate whether the witness statements might be discoverable as qualified *772 work product, nor did it determine whether the statutory burden for such discovery had been met. The trial court also upheld, without any foundational support, the work product objection to form interrogatory No. 12.3. In these respects, the trial court abused its discretion.
I concur with the majority that the writ should issue to the extent that such relief would require the trial court to vacate its discovery order. However, unlike the majority, I would remand the case to allow the trial court to consider the discovery issues under principles applicable to qualified work product. The trial court relied upon Nacht & Lewis Architects, Inc. v. Superior Court (1996) 47 Cal.App.4th 214 [54 Cal.Rptr.2d 575] (Nacht & Lewis) in concluding that these witness statements were protected by the absolute work product privilege. I, like the majority, disagree with Nacht & Lewis to the extent it holds that whenever an attorney records in writing the substance of a witness's statement, all of the written notes or recorded statements are protected by the absolute work product privilege. (Id. at p. 217 ["any such notes . . . protected by the absolute work product" (italics added)].) However, I disagree with the majorityand with the line of cases cited in the majority opinionthat the qualified work product privilege cannot attach to the witness statements at issue here. To date, our Supreme Court has not weighed in on this subject. It should do so. Clarifying the scope of the work product privilege in this context is important for legal practitioners and in propria persona litigants.
Before proceeding to an explanation of my conclusions herein, I briefly reiterate the salient facts of the parties' discovery dispute. In this wrongful death action stemming from an incident in which 13-year-old Jeremy W. (decedent) drowned in the Tuolumne River, all parties to the lawsuit were informed of the identities of several eyewitnesses to the drowning. The attorney representing defendant, California's Department of Water Resources (DWR), sent an investigator to interview those witnesses and told the investigator what questions to ask. The investigator proceeded to interview four individuals, and all four of the interviews were audio-recorded.[4] Subsequently, plaintiff, Debra Coito, served a supplemental interrogatory to DWR requesting any new information in response to form interrogatory No. 12.3. Form interrogatory No. 12.3 asked DWR to state whether it had "obtained a written or recorded statement from any individual" concerning the incident, and if so, to identify the persons from whom such written or recorded statements were obtained. Further, to the extent any written or recorded witness statements were obtained by DWR, plaintiff *773 sought the production thereof in a separately served supplemental demand for production of documents. DWR objected to both discovery requests on the ground that the identities of the particular witnesses from whom its attorney decided to obtain recorded statements, and the recorded statements themselves, were protected from disclosure as work product under the holding of Nacht & Lewis, supra, 47 Cal.App.4th 214.[5] The trial court agreed and denied plaintiff's motion to compel further responses. The trial court explained its ruling by highlighting the following language from Nacht & Lewis at page 217: "`A list of the potential witnesses interviewed by Defendant's counsel which interviews counsel recorded in notes or otherwise would constitute qualified work product because it would tend to reveal counsel's evaluation of the case by identifying the persons who claimed knowledge of the incident from whom counsel deemed it important to obtain statements. Moreover, any such notes or recorded statements taken by Defendant's counsel would be protected by the absolute work product privilege because they would reveal counsel's "impressions, conclusions, opinions, or legal research or theories" within the meaning of Code of Civil Procedure § 2018, subdivision (c). [Citation.]'" (Boldface omitted.)
Plaintiff then sought immediate review of the trial court's order by filing the instant petition for writ of mandate.

I. Work Product Law

A. What Work Product Law Protects and Why

It is appropriate to begin with an overview of the work product doctrine. The notion that the work product of an attorney should at times be protected from discovery was first recognized in the landmark case of Hickman v. Taylor (1947) 329 U.S. 495 [91 L.Ed. 451, 67 S.Ct. 385] (Hickman), which established in the federal courts "a qualified privilege for certain materials prepared by an attorney acting for his client in anticipation of litigation." (2,022 Ranch v. Superior Court (2003) 113 Cal.App.4th 1377, 1389 [7 Cal.Rptr.3d 197].) As explained in Hickman: "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant *774 facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible waysaptly though roughly termed by the Circuit Court of Appeals in this case as the `work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (Hickman, supra, at pp. 510-511.) The Hickman court affirmed the judgment of the court of appeals, which held that witness statements obtained by an attorney were privileged as "`work product of the lawyer.'" (Id. at pp. 500, 511.)
In 1963, in response to decisions by our Supreme Court that the work product doctrine did not apply as a privilege under California law (see Greyhound Corp. v. Superior Court (1961) 56 Cal.2d 355, 399-401 [15 Cal.Rptr. 90, 364 P.2d 266] (Greyhound); Suezaki v. Superior Court (1962) 58 Cal.2d 166, 177-178 [23 Cal.Rptr. 368, 373 P.2d 432]), the Legislature adopted an amendment to the Civil Discovery Act (now § 2016.010 et seq.; hereafter the Discovery Act) as proposed by the California State Bar for the purpose of protecting attorney work product. (Dowden v. Superior Court, supra, 73 Cal.App.4th at pp. 132-133 [summarizing legislative history].) The State Bar report submitted to the Legislature stated that the amendment was necessary "to `. . . protect the lawyer's normal work processes . . . [and] to establish a more desirable balance between "discovery" and the right of litigants and prospective litigants to obtain advice of experts, make investigations and do other acts, without fear of unlimited or indiscriminate disclosures to, and use by adversaries.'" (Ibid., italics added, quoting Com. Rep. on Admin. of Justice (1962) 37 State Bar J. 585, 586.) The report "expresse[d] concern over litigants, as well as of attorneys, having unrestrained access by their opponents to materials prepared in anticipation of litigation." (Dowden v. Superior Court, supra, at p. 133 [noting that the State Bar's report "may be used as an interpretive aid" to the legislation].) These goals, including that each attorney should have sufficient privacy to make an investigation of his or her own client's case without risk of indiscriminate disclosure to the other side as well as the reasonable protection of the *775 attorney's industry from those who would attempt to ride free thereon, are best achieved by treating attorney-recorded witness statements[6] as qualified work product.
The work product doctrine as codified in California reflects the same important policy concerns. Section 2018.020 states that it is "the policy of the state to do both of the following: [¶] (a) Preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases. [¶] (b) Prevent attorneys from taking undue advantage of their adversary's industry and efforts." These policy goals are implemented by the provisions of section 2018.030. Subdivision (a) of section 2018.030 states: "A writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances."[7] This is known as the absolute work product privilege. (State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 649-650 [62 Cal.Rptr.2d 834].) All other work product is protected by the qualified privilege as provided in subdivision (b) of section 2018.030, which states: "The work product of an attorney, other than a writing described in subdivision (a), is not discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing that party's claim or defense or will result in an injustice." If discovery is sought of matters coming within the qualified privilege, the court balances the need for disclosure against the purpose served by the work product doctrine. (National Steel Products Co. v. Superior Court (1985) 164 Cal.App.3d 476, 490 [210 Cal.Rptr. 535].)
"The effect of the work product rule may be summarized by noting that it creates in California a qualified privilege against discovery of a general work product and an absolute privilege against disclosure of documents containing the attorney's `impressions, conclusions, opinions, or legal theories.' [¶] While the lawyer-client privilege is prompted by the need for confidentiality of the client, the work product rule is designed to satisfy the attorney's requirement for privacy." (American Mut. Liab. Ins. Co. v. Superior Court (1974) 38 Cal.App.3d 579, 594 [113 Cal.Rptr. 561].) As reflected in the policy goals of the work product statute and its legislative history, such *776 privacy is needed so that an attorney may thoroughly investigate the favorable and unfavorable aspects of a case (see § 2018.020, subd. (a)) "`without fear of . . . indiscriminate disclosures to, and use by adversaries'" (Dowden v. Superior Court, supra, 73 Cal.App.4th at pp. 132-133, quoting Com. Rep. on Admin. of Justice, supra, 37 State Bar J. at p. 586),[8] and to prevent a lazy practitioner from taking undue advantage of an adversary's industry and trial preparation (§ 2018.020, subd. (b); Dowden v. Superior Court, supra, at p. 133).

B. Deciding What Constitutes Work Product

Aside from the absolute protection afforded to writings containing an attorney's "impressions, conclusions, opinions, or legal research or theories" (§ 2018.030, subd. (a)), the Discovery Act provides no definition of what constitutes work product. That is left to judicial determination on a case-by-case basis. (City of Long Beach v. Superior Court (1976) 64 Cal.App.3d 65, 71 [134 Cal.Rptr. 468]; see § 2018.040.) "In determining whether particular matter is privileged as work product, the reviewing court should be guided by the underlying policies of section 2018 [now § 2018.020]" (Dowden v. Superior Court, supra, 73 Cal.App.4th at p. 135), including "the policy of promoting diligence in preparing one's own case, rather than depending on an adversary's efforts." (Ibid.)
Although the statutory provision does not define work product, it is worth noting that when cases have attempted to offer a working definition of what constitutes work product, they expressly include witness interviews and statements. The Hickman court described an attorney's work product this way: "This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." (Italics added.) (Hickman, supra, 329 U.S. at p. 511.) Another definition of work product that is sometimes noted in the case law is the following, which likewise includes interviews and statements within the scope of the definition: "[I]t is `the product of [the attorney's] effort, research, and thought in the preparation of his client's case. It includes the results of his own work, and the work of those employed by him or for him by his client, in investigating both the favorable and unfavorable aspects of the case, the information thus assembled, and the legal theories and plan of strategy developed by the attorneyall as reflected in interviews, statements, memoranda, correspondence, briefs, and any other writings reflecting the attorney's "impressions, conclusions, opinions, or legal research or theories," and in countless other *777 tangible and intangible ways.'" (BP Alaska Exploration, Inc. v. Superior Court (1988) 199 Cal.App.3d 1240, 1253-1254, fn. 4 [245 Cal.Rptr. 682], original italics omitted, new italics added.)
Instead of focusing on the language and policy of section 2018.020 in ascertaining what constitutes work product, California courts have focused on the distinction between "derivative" or "interpretative" material on the one hand, and "nonderivative" or "evidentiary" material on the other. (See, e.g., Mack v. Superior Court (1968) 259 Cal.App.2d 7, 10-11 [66 Cal.Rptr. 280] (Mack); Fellows v. Superior Court (1980) 108 Cal.App.3d 55, 68-69 [166 Cal.Rptr. 274]; Rodriguez v. McDonnell Douglas Corp. (1978) 87 Cal.App.3d 626, 647 [151 Cal.Rptr. 399].) These cases have concluded that work product protection extends only to "`derivative'" material, which is material "created by or derived from an attorney's work on behalf of a client that reflects the attorney's evaluation or interpretation of the law or the facts involved." (2 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2009) ¶ 8:235, p. 8C-69 (rev. # 1, 2006).) In contrast, "`nonderivative'" material is that which is "only evidentiary in character." As such, it is "not protected even if a lot of attorney `work' may have gone into locating and identifying [it]." (Ibid.)
Examples of derivative materials include, among other things, "diagrams prepared for trial, audit reports, appraisals, and other expert opinions, developed as a result of the initiative of counsel in preparing for trial." (Mack, supra, 259 Cal.App.2d at p. 10.) Examples of nonderivative or evidentiary materials include, among other things, the identity and location of physical evidence (ibid.), and the identity and location of witnesses. (Aerojet-General Corp. v. Transport Indemnity Insurance (1993) 18 Cal.App.4th 996, 1004 [22 Cal.Rptr.2d 862]; City of Long Beach v. Superior Court, supra, 64 Cal. App.3d at p. 73.) A guiding principle in this analysis is that "[i]nformation regarding events provable at trial, or the identity and location of physical evidence, cannot be brought within the work product privilege simply by transmitting it to the attorney." (Mack, supra, at p. 10.) Thus, for example, if a witness independently prepares a witness statement, that statement is not brought within the work product privilege merely by transmitting it to the attorney. (Nacht & Lewis, supra, 47 Cal.App.4th at pp. 217-218.) The same would be true of an item of physical evidence which came into the possession of an attorney; for example, the subject car tire in a tire blowout case.

II. Attorney-recorded Witness Statements[9]
As the case before us illustrates, a more difficult question is how to fairly characterize a written or recorded witness statement that is generated because *778 the attorney or his or her agent conducted an interview of a witness and recorded what was said, either in written notes or an audio recording. Such a written or recorded statement possesses some of the characteristics of derivative work product (i.e., it would not exist except for the attorney's effort and diligence, and arguably the particular questions asked reflect the attorney's evaluation of the case), as well as characteristics of evidentiary matter (i.e., a witness statement may be admissible to refresh recollection, or to impeach a witness, or if the witness becomes unavailable to testify).
What approach to such witness statements is indicated in our case law? First, the absolute work product protection has been applied to the extent necessary to prevent the disclosure of attorney impressions, conclusions, opinions, or legal research or theories. This standard is more nuanced than the one applied by the trial court, and is clarified below. Second, under existing California case law, a witness statement prepared or recorded by an attorney (or the attorney's agent) has not been afforded qualified work product protection. The majority opinion aligns itself with that authority. I strongly disagree and contend that qualified work product protection applies to such attorney-recorded witness statements, at least in the circumstances that are found in the present case.

A. Absolute Protection

I begin with a discussion of the extent to which witness statements may come within the absolute protection. Any portion of a written or recorded witness statement disclosing the attorney's impressions, conclusions, opinions, or legal research or theories is absolutely protected from discovery. (§ 2018.030, subd. (a); Rodriguez v. McDonnell Douglas Corp., supra, 87 Cal.App.3d at p. 648.) The absolute protection "extends to" an attorney's written notes or recorded statements "about a witness's statements" because such notes or statements would necessarily reveal the attorney's impressions. (Rico v. Mitsubishi Motors Corp. (2007) 42 Cal.4th 807, 814 [68 Cal.Rptr.3d 758, 171 P.3d 1092], italics added (Rico); see Rodriguez v. McDonnell Douglas Corp., supra, at pp. 647-648 [portion of notes consisting of "comments about" the witness's statement were absolutely privileged].) "`[A]ny such notes or recorded statements taken by defendants' counsel would be protected by the absolute work product privilege because they would reveal counsel's "impressions, conclusions, opinions, or legal research or theories" within the meaning of [the work product doctrine].'" (Rico, supra, at p. 814, quoting Nacht & Lewis, supra, 47 Cal.App.4th at p. 217, *779 italics added.)[10] Additionally, "[w]hen a witness's statement and the attorney's impressions are inextricably intertwined," the absolute work product protection extends to all portions of the written or recorded statement. (Rico, supra, at p. 814, italics added, citing Rodriguez v. McDonnell Douglas Corp., supra, at p. 648.)
The analysis outlined in Rico, supra, 42 Cal.4th at page 814, suggests that while section 2018.030, subdivision (a), protects attorney impressions from disclosure under the absolute work product privilege, a recorded witness statement is not necessarily protected under the absolute privilege merely because the recording was made or prepared by an attorney or the attorney's agent. Additionally, even if such a recording included one or more isolated statements of the attorney's impressions, that fact would not necessarily mean the entire recording was absolutely privileged. That would be the case only if the attorney impressions and witness statement were inextricably intertwined. As correctly summarized by one treatise, "if the notes . . . reflect the attorney's (or his or her investigator's) impressions, conclusions, or opinions regarding the witness, at least those portions of the notes are absolutely protected from discovery. [Citations.] [¶] And, where the witness'[s] statement and the attorney's impressions are inextricably intertwined, then absolute protection is afforded to all portions of the attorney's notes. [Citation.]" (2 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, supra, ¶ 8:225, p. 8C-64 (rev. # 1, 2009).)
One court applied a different test. In Nacht & Lewis, the Court of Appeal indicated that whenever an attorney records in writing the substance of a witness's statement, all of the written notes or recorded statements are protected by the absolute work product privilege. (Nacht & Lewis, supra, 47 Cal.App.4th at p. 217 ["any such notes . . . protected by the absolute work product" (italics added)].) To the extent Nacht & Lewis intended to create a per se rule of absolute protection in all such cases, the majority and I reject that rule. As I have explained, an attorney's recording of a witness statement, in writing or otherwise, does not necessarily mean the attorney's impressions will actually be disclosed therein. And even if the attorney's impressions are expressed to a minor extent in portions of the recording, it is possible that those impressions are not inextricably intertwined with the witness's statements and may be redacted. It is therefore possible that some or all of a witness statement prepared or recorded by an attorney (or an attorney's agent) will remain outside the scope of the absolute work product protection. *780 Accordingly, a per se rule of absolute protection goes too far. The correct approach is the one generally outlined in Rico, supra, 42 Cal.4th 807, as summarized above.

B. Qualified Protection

As far as qualified work product is concerned, several cases have held that written or recorded statements of percipient witnesses are not protected as qualified work product even when they were prepared or recorded by the attorney or the attorney's agent. The rationale in each of these cases was that witness statements are only evidentiary in character, not derivative or interpretative. (See, e.g., Rodriguez v. McDonnell Douglas Corp., supra, 87 Cal.App.3d at p. 647 [portions of notes recording witness's statements were not in themselves protected as work product since such statements were intrinsically "nonderivative" and "noninterpretative" in nature, but to the extent the statements were inextricably intertwined with the impressions of the attorney's agent, all portions of the notes were absolutely protected]; People v. Williams (1979) 93 Cal.App.3d 40, 63-64 [155 Cal.Rptr. 414] [prosecutor's notes summarizing statements of victim were "nonderivative" or "noninterpretative" and thus did not constitute work product]; Kadelbach v. Amaral (1973) 31 Cal.App.3d 814, 822-823 [107 Cal.Rptr. 720] [tape-recorded statements made by witnesses to attorney were presumed to be evidentiary and nonderivative in character, contrary to the appellant's claim that all such statements "made to an attorney" are protected from discovery "as a matter of law"]; Fellows v. Superior Court, supra, 108 Cal.App.3d at p. 69 [stating principle that "`written or recorded statements of prospective witnesses'" are "nonderivative evidentiary material excluded from the concept of an attorney's work product"].) In short, the prevailing viewpoint is that "[i]f the attorney's notes of a witness interview merely record what the witness said, they are not work product (they are only `evidentiary')." (2 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, supra, ¶ 8:225, p. 8C-64 (rev. # 1, 2009).)[11] Interestingly, these opinions contain little discussion of the work product privilege. In summary fashion, they conclude that witness statements are nonderivative and therefore not entitled to even qualified work product privilege protection under the statutory provision now numbered as section 2018.020. They also fail to mention that the landmark case of Hickman actually applied the work product privilege to witness statements obtained by an attorney.[12]
*781 I take issue with the broad-brush holdings in these cases that written or recorded witness statements are nonderivative and wholly evidentiary such that they are not entitled to work product protection. These cases ignore the clear mandate of the statute (now § 2018.020) and ascribe an impermissibly overbroad definition of what is nonderivative material. They treat the situation where an attorney records a witness's statement the same as when a witness turns over an independently prepared statement. The latter statement is clearly nonderivative in character because the only involvement of the attorney is taking possession of the statement after it was made. The same cannot be said of the statement recorded by the attorney. Its existence is derived from the attorney's initiative and efforts. To characterize it as nonderivative is a blatant misnomer.
These cases also miss the mark when characterizing the statements as evidentiary. All witness statements, diagrams, audit reports, photos, etc., are potentially evidentiary. If all that were necessary to disqualify an item from work product privilege protection was to characterize it as potential evidence, then nothing would be protected.
In my opinion, where a witness is interviewed by an attorney or the attorney's agent, and a recording is made by the attorney or the attorney's agent of what that witness said, the recording should be protected by the qualified work product privilege. This conclusion is based on two important considerations.
First, the application of qualified privilege to such attorney-recorded witness statements promotes the important legislative policies for the work product privilege. "In determining whether particular matter is privileged as work product, the reviewing court should be guided by the underlying policies of section 2018 [now § 2018.020]." (Dowden v. Superior Court, supra, 73 Cal.App.4th at p. 135.) The legislative policy that attorneys have sufficient privacy to encourage them to "prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases[,]" and that attorneys be prevented from "taking undue advantage of their adversary's industry and efforts" (§ 2018.020, subds. (a)-(b)), is undermined when any written or recorded witness statement prepared by counsel must inevitably be turned over to opposing counsel on a minimal showing of good cause.
*782 It has been accurately observed that, in general, "[n]ot much has been required to establish `good cause' for production of [a] witness [statement]" under section 2031.310. (2 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, supra, ¶ 8:245.3, p. 8C-73 (rev. # 1, 2006); see, e.g., Christy v. Superior Court (1967) 252 Cal.App.2d 69, 71-72 [60 Cal.Rptr. 85] ["good cause" shown if witnesses could not recall what they said in their prior witness statements].) Because that is so, as a practical matter no meaningful privacy exists within which an attorney may have sufficient confidence to thoroughly investigate and record potentially unfavorable matters. And if any such witness statements are recorded, his adversary would likely be able to obtain them by making a routine discovery request and motion to compelthereby taking full advantage of, or otherwise gaining a free ride upon, the attorney's thoroughness and industry. This is not in accord with the important legislative policies declared in section 2018.020. In order to further those statutory policies, and to provide the measure of attorney privacy necessary thereto, something more is needed than allowing all such materials to be discovered on a bare showing of good cause under section 2031.310. That something more is the standard applicable to qualified work product, as set forth at section 2018.030, subdivision (b).
Second, witness statements recorded by an attorney (or his agent) in preparing a client's case have significant derivative characteristics that weigh in favor of qualified work product protection. I do not agree that such statements are wholly nonderivative and evidentiary. On the contrary, they would not exist at all except for the attorney's effort and diligence in preparing his or her client's case, and may contain matters gleaned from that witness solely as a result of the attorney's particular foresight or prudence. As one treatise on the law of civil discovery has observed, "[t]hese statements exist only because of the trial preparation efforts of the adverse party . . .," and such "[s]tatements of independent witnesses taken by an attorney are the prototypical form of `work product.'" (2 Hogan & Weber, Cal. Civil Discovery (2d ed. 2005) Work Product Protection, § 13.8, p. 13-25, fn. omitted.) Moreover, it is reasonable to assume that an attorney's choice of questions asked in an interview of a witness reflects to some degree the attorney's evaluation of the case and/or the particular issues about which he is most concerned. In this sense, many of the questions asked are likely derived from the attorney's thoughts concerning the strengths and weaknesses of the case. It has been recognized that a list of the witnesses an attorney will call at trial is protected by the qualified privilege because such a list discloses tactical information and "reflects [counsel's] evaluation of the strengths and weaknesses of his case." (City of Long Beach v. Superior Court, supra, 64 Cal.App.3d at p. 73.) If that is so, then by parity of reasoning a recorded witness statement reflecting the particular questions or issues an attorney (or his agent) pursued when talking to the witness should also be protected by *783 the qualified privilege. In this case, the questions posed to the witnesses originated with the attorney.
Of course, a written or recorded witness statement is also evidentiary in character. The significance of its evidentiary value is highlighted by the fact that it may be admissible at trial in a variety of situations, including where needed to refresh a witness's recollection, to impeach a witness, or where a witness has become unavailable. (See, e.g., Evid. Code, §§ 1235-1237.) The point here is that where a witness statement is recorded by an attorney (or the attorney's agent) from an interview of that witness, the statement is also, to a substantial degree, derivative in character. Thus, although the derivative-versus-nonderivative analysis does not definitively resolve our issue, the matter at hand is at least partly derivative in a meaningful sense that implicates the statutory policies of the work product law. In my judgment, based on a full consideration of those statutory policy objectives, the scale is tipped in favor of the conclusion that such attorney-recorded witness statements are qualified work product.
The conclusion that the qualified privilege applies to witness statements of the type described herein does not necessarily preclude discovery. To the contrary, such statements must be produced if it is shown by the party seeking production that a denial of discovery would "unfairly prejudice" the party seeking discovery or would result in "an injustice." (§ 2018.030, subd. (b).) In considering whether to allow discovery of matters protected under the qualified privilege, the court balances the need for disclosure against the purpose served by the work product doctrine. (National Steel Products Co. v. Superior Court, supra, 164 Cal.App.3d at p. 490.) Requiring such a showing strikes a fair balance between the competing statutory policies of protecting work product and allowing liberal discovery. (Cf. §§ 2017.010, 2018.020.) In every case, the trial court would balance the interests involved and evaluate whether or not discovery is warranted under the statutory criteria in section 2018.030, subdivision (b).

C. Application

In the present case, the trial court denied discovery of the recorded witness statements based on a mistaken proposition of law that all witness statements recorded by an attorney (or the attorney's agent) are entirely protected by the absolute work product privilege. That was error. The absolute work product privilege would preclude the court-ordered discovery of DWR's attorney's impressions, if any, that may be contained in the recordings. It would prevent discovery of all portions of the recordings only if the attorney's impressions are inextricably intertwined therewith. (See Rico, supra, 42 Cal.4th at p. 814.) The trial court did not review or consider any preliminary or foundational *784 showing, whether in camera or otherwise, to support the assertion of privilege or its conclusion that the entirety of each of the recordings constituted absolute work product. Rather, the trial court (and DWR) merely recited and relied upon the approach articulated in Nacht & Lewis, supra, 47 Cal.App.4th 214, with which the majority and I now disagree. The trial court abused its discretion by applying the wrong legal standard to its analysis of the absolute work product privilege.
Moreover, to the extent that all or any portion of the recorded statements were not absolutely privileged, in my opinion the trial court further abused its discretion by failing to evaluate whether the recorded statements were discoverable under the standards applicable to qualified work product. Indeed, I believe that the primary issue of whether the recorded statements are discoverable in this case hinges on whether or not a sufficient statutory showing is (or was) made to permit discovery of qualified work product.
I agree that the trial court's order denying production of witness statements should be set aside in this case. In my view, the recorded statements are at least qualified work product. However, I would remand with directions that the trial court (1) determine the extent to which the absolute work product privilege applies, if at all, to the recorded witness statements, and, (2) if any portions of the recorded statements are not absolutely privileged, determine whether a sufficient showing has been presented to permit discovery thereof under the qualified work product privilege.

III. Form Interrogatory No. 12.3

The trial court upheld DWR's work product objection to form interrogatory No. 12.3 based on the premise that a list of the persons from whom witness statements were obtained would necessarily reveal the attorney's evaluation of the case. I agree with the majority that this was error. However, unlike the majority, I do not rule out the possibility of a valid objection to form interrogatory No. 12.3 based on qualified work product if an adequate showing has been made. The error in this case was the lack of a sufficient foundational showing to support the objection, as I now explain.
The qualified work product protection has been held to apply where a discovery request seeks tactical information concerning witnesses or the attorney's strategy or evaluation of the case. For example, in City of Long Beach v. Superior Court, supra, 64 Cal.App.3d 65, one party served an interrogatory requesting a list of all nonexpert witnesses that his adversary intended to call at trial. The Court of Appeal held that such a list was clearly protected as qualified work product: "[T]he complete list of trial witnesses sought in this case is a derivative product developed as a result of the *785 initiative of counsel in preparing for trial. The forced revelation of this list would violate the work product doctrine because counsel's decision in this respect is strategic; it necessarily reflects his evaluation of the strengths and weaknesses of his case." (Id. at p. 73.)
More recently, Nacht & Lewis held that a list of all persons interviewed by counsel regarding the incident on which the lawsuit was based, which information had been requested using form interrogatory No. 12.2, came within the protection of the qualified work product privilege. The Court of Appeal explained: "Compelled production of a list of potential witnesses interviewed by opposing counsel would necessarily reflect counsel's evaluation of the case by revealing which witnesses or persons who claimed knowledge of the incident (already identified by defendants' response to interrogatory No. 12.1) counsel deemed important enough to interview." (Nacht & Lewis, supra, 47 Cal.App.4th at p. 217.) I do not disagree with this part of the Nacht & Lewis opinion, nor is there any occasion to do so here.
However, as relevant to the matter before us, Nacht & Lewis, supra, 47 Cal.App.4th 214, went on to hold that the qualified privilege also applied to form interrogatory No. 12.3. As noted, form interrogatory No. 12.3 asks whether a party has any written or recorded witness statements, and it requests among other things the identities of the witnesses from whom such statements were obtained. Nacht & Lewis concluded that all such information was qualified work product because it would necessarily reveal the attorney's evaluation of the case. (Nacht & Lewis, supra, at p. 217.) I disagree with the all-encompassing scope of that conclusion.
Ordinarily, an attorney's evaluation of a case would not be revealed to any significant degree by answering form interrogatory No. 12.3. That is, the mere fact a written or recorded witness statement exists, or that the attorney has obtained such a statement from a particular witness or witnesses, does not ordinarily disclose any significant tactical or evaluative information. Take, for example, a typical automobile accident. The police report may disclose the existence of several witnesses. If the attorney for one party obtains witness statements from one or more of those individuals whom everyone in the case knows are percipient witnesses, that fact does not show anything definite about the attorney's evaluation of the strengths and weaknesses of the case, attorney strategy or tactics, or even the relative strength of any particular witness. It may be inferred that the attorney was diligent enough to seek out statements from witnesses, and actually obtained one or more, but to go beyond that would in most cases be conjecture or speculation. Indeed, a particular witness statement might be in an attorney's file for a host of reasons, including that the person happened to be available when the attorney sent out an investigator.
*786 For these reasons, I cannot endorse the blanket approach used in Nacht & Lewis, supra, 47 Cal.App.4th 214, which would preclude discovery of preliminary facts regarding witness statements under form interrogatory No. 12.3 whenever the responding party made a work product objection. Rather, a party should be required to respond to form interrogatory No. 12.3 unless he or she is able to present foundational facts (and not speculation) that support the assertion of the qualified work product privilege in that particular case. In other words, a propounding party's mere use of form interrogatory No. 12.3 does not, by itself, substantiate an objection based on the qualified privilege. An affirmative showing must be made by the objecting party, whether in camera or otherwise, to persuade the trial court that if the interrogatory were answered, it would actually result in a significant disclosure of the attorney's tactics or evaluation of the case. In this regard, the basic rule prevails that the party claiming a privilege has the burden of establishing the preliminary or foundational facts necessary to support its exercise. (BP Alaska Exploration, Inc. v. Superior Court, supra, 199 Cal.App.3d at p. 1252; Wellpoint Health Networks, Inc. v. Superior Court (1997) 59 Cal.App.4th 110, 123-124 [68 Cal.Rptr.2d 844].)
There is one final reason that form interrogatory No. 12.3 must be answered, absent an adequate showing to support a claim of qualified privilege. The information requested in form interrogatory No. 12.3 is preliminary to a demand for the documents or witness statements themselves. In most cases, the real discovery battle is over production of the witness statements, and in connection with an ensuing motion to compel production thereof, the type of preliminary information contained in a response to form interrogatory No. 12.3 is what would have to be provided by the responding party in any event in a "`privilege log'" regarding the witness statements. (Hernandez v. Superior Court (2003) 112 Cal.App.4th 285, 292 [4 Cal.Rptr.3d 883].) The purpose of a privilege log is to provide a specific factual description of documents in aid of substantiating a claim of privilege in connection with a request for document production. (Ibid.) Further, the existence of a document containing privileged information is not privileged, and interrogatories may be used to discover the existence of documents in the other party's possession. (Id. at p. 293.)
In our case, DWR's attorney sent an investigator to interview the eyewitnesses to the drowning. There were six eyewitnesses, although it appears only five were known at the time the statements were sought. DWR's investigator succeeded in interviewing four eyewitnesses and generated four recorded statements. These facts, had they been disclosed in a response to form interrogatory No. 12.3, would have revealed nothing of consequence regarding DWR's attorney's evaluation of the case, one way or the other. Accordingly, the trial court abused its discretion when it upheld DWR's objection to the interrogatory based on the qualified privilege.
*787 In conclusion, although I concur (in part) with the decision to grant the writ in order to vacate the trial court's discovery order, I dissent from the majority's refusal to apply the qualified work product privilege to attorney-recorded witness statements, and from the majority's blanket overruling of the objection to form interrogatory No. 12.3 without acknowledging that, with a proper showing, a valid objection on work product grounds could be made.
NOTES
[1] Petitioner's counsel points out that, at the time of the interviews, the juveniles' parents were not present, the agents were armed and wore badges, and the agents did not explain to the juveniles that the statements were being taken for a civil action, not a criminal matter.
[2] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.
[3] Form interrogatory No. 12.3 stated as follows:

"Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state:
"(a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;
"(b) the name, ADDRESS, and telephone number of the individual who obtained the statement;
"(c) the date the statement was obtained; and
"(d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy." (Boldface omitted.)
[4] We will discuss the difference between absolute and qualified work product protection post.
[5] Although discovery orders are generally not reviewed by extraordinary writ (Sav-On Drugs, Inc. v. Superior Court (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739]; Johnson v. Superior Court (2000) 80 Cal.App.4th 1050, 1061 [95 Cal.Rptr.2d 864]), such review may be appropriate if an abuse of discretion results in a material or unjustifiable denial of discovery. (See, e.g., Volkswagen of America, Inc. v. Superior Court (2006) 139 Cal.App.4th 1481, 1487 [43 Cal.Rptr.3d 723]; Lehman v. Superior Court (1986) 179 Cal.App.3d 558, 562 [224 Cal.Rptr. 572].)
[6] Many cases refer to work product protection as a "privilege." (E.g., State Farm Fire & Casualty Co. v. Superior Court (1997) 54 Cal.App.4th 625, 650-651 [62 Cal.Rptr.2d 834]; BP Alaska Exploration, Inc. v. Superior Court (1988) 199 Cal.App.3d 1240, 1250 [245 Cal.Rptr. 682]; see also Evid. Code, § 915.) Others refer to work product as a "doctrine" or a "protection." (E.g., Rico v. Mitsubishi Motors Corp. (2007) 42 Cal.4th 807, 814 [68 Cal.Rptr.3d 758, 171 P.3d 1092].) We have used these terms interchangeably.
[7] People v. Boehm, supra, 270 Cal.App.2d 13 was decided before the law of discovery in criminal cases was codified in 1990. (Pen. Code, § 1054 et seq., as added by § 23 of Prop. 115, approved by electorate eff. June 6, 1990.)
[8] There is no dispute in this case that the agents sent by the attorney for the state were acting as his representative. The cases have recognized that the use of an investigator to obtain information does not negate work product protection. (Rodriguez v. McDonnell Douglas Corp., supra, 87 Cal.App.3d at p. 647.)
[9] The secondary authorities have recognized as much. (Cal. Judges Benchbook: Civil Proceedings-Discovery (CJER 1994) §§ 4.34, 4.35, pp. 44-45; id. (2009 update) § 4.34, p. 74; 2 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, supra, ¶ 8.245, p. 8C-72 (rev. # 1, 2008); 1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2009) Attorney Work-Product Doctrine, § 43.2, p. 995.)
[10] The work product doctrine was not codified in California until 1963. (Stats. 1963, ch. 1744, § 1, pp. 3477-3479.)
[11] "Independent" witnesses are to be distinguished from witnesses who have a confidential relationship with the attorneye.g., the client.
[12] The dissent suggests that Greyhound is "simply irrelevant to our case." (Conc. & dis. opn., post, at p. 780, fn. 12.) To the contrary, the opinion in Greyhound addresses work product theory at length and notes in the course of the discussion that, under Hickman, "it is not correct to say that the work product rule would bar" discovery of the written statements of witnesses taken by an attorney or the attorney's representative. (Greyhound, supra, 56 Cal.2d at p. 401.)
[13] Even where the work product privilege does not apply, a party seeking discovery of a witness's statement taken by an attorney still must show good cause for production. (§ 2031.310, subd. (b).)
[14] See footnote 7, ante, regarding criminal discovery after 1990.
[15] Nacht & Lewis is cited with apparent approval in dicta in Rico v. Mitsubishi Motors Corp., supra, 42 Cal.4th at page 814, but so is Rodriguez v. McDonnell Douglas Corp., supra, 87 Cal.App.3d at pages 647-648. We do not read Rico as choosing between competing authorities.
[16] The dissent notwithstanding, we do not suggest that such a procedure is not available with regard to form interrogatory No. 12.3.
[17] Given this conclusion, we need not and do not consider petitioner's additional argument that, because witness interviews by their very nature are not confidential, the waiver doctrine should apply. (BP Alaska Exploration, Inc. v. Superior Court, supra, 199 Cal.App.3d at p. 1261 [attorney work product protection is waived "by the attorney's voluntary disclosure or consent to disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing"].)
[1] In propria persona litigants may also assert the work product privilege. (Dowden v. Superior Court (1999) 73 Cal.App.4th 126, 128 [86 Cal.Rptr.2d 180].)
[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.
[3] I mean an ordinary third party witnessi.e., a person with knowledge of facts who is not the attorney's client, a party to the lawsuit, or a person retained by a party.
[4] DWR's opposition to petition for writ of mandate confirms that the investigator was sent to interview the persons identified as the eyewitnesses to the drowning.
[5] DWR objected on the grounds of both absolute and qualified work product privilege.
[6] For convenience, at times I use the term "attorney-recorded" or "attorney-prepared" as a shorthand description of the witness statements at issue in this case. As used herein, these terms include witness statements prepared or recorded by an agent (e.g., an investigator) of the attorney. The present case involves statements recorded by DWR's attorney's investigator, who was directed by DWR's attorney on what questions to ask.
[7] The term "writing" is broadly defined by the Discovery Act to include any form of recorded information, including audio recordings. (§ 2016.020, subd. (c) [adopting definition of a "writing" from Evid. Code, § 250].)
[8] Similarly, the work product doctrine "protects the `"mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."' [Citation.]" (2,022 Ranch v. Superior Court, supra, 113 Cal.App.4th at p. 1390.)
[9] See footnote 6, ante.
[10] Rico quotes this language from Nacht & Lewis, supra, 47 Cal.App.4th 214, apparently in reference to the principle stated in the preceding sentence of the Rico opinioni.e., that an attorney's notes about a witness's statements are absolutely privileged. (Rico, supra, 42 Cal.4th at p. 814.)
[11] Of course, even if work product does not apply, a party seeking discovery of a witness's statement that was prepared or initiated by the attorney would still have to make a showing of good cause for production. (§ 2031.310, subd. (b).)
[12] The majority opinion makes numerous references to the Greyhound case, which upheld a trial court's order that the defendant produce statements taken from independent witnesses. But the Greyhound decision did not turn on an interpretation of the work product privilege because the court expressly determined that the work product privilege did not then exist under California law. (Greyhound, supra, 56 Cal.2d at p. 401.) This prompted the California State Bar to propose, and our Legislature to enact, an amendment to the Discovery Act, which expressly recognized the work product privilege in California. (Dowden v. Superior Court, supra, 73 Cal.App.4th at pp. 132-133 [summarizing legislative history].) Thus, the Greyhound decision is simply irrelevant to our case, which concerns the application of the work product doctrine to witness statements.